## BALTIMORE AND OHIO R. R. CO. *vs.* J. & W. G. LAFFERTY.

### January Term, 1867.

1. So long as a contract continues executory, the plaintiff must declare specially; but when it has been executed on his part, and nothing remains but the payment of the price in money, by the defendant, the plaintiff may declare generally, using the common counts, or specially on the original contract, at his election.

2. Where the contract, though partly performed, has been abandoned by mutual consent, the plaintiff may resort to the common counts alone for remuneration for what he has done under the special agreement.

3. Where it appears that what was done by the plaintiff, was done under a special agreement, but not in the stipulated time or manner, and yet was beneficial to the defendant, and is or has been accepted and enjoyed by him, the plaintiff cannot recover upon the contract from which he has dedeparted; yet he may recover upon the common counts for the reasonable value of the benefit which upon the whole the defendant has derived from what he has done.

4. Plaintiffs and defendant entered into a special contract, by which the plaintiffs were to make certain sections of defendant's railroad, in a special manner, under the supervision and control of the defendant's engineers, to be completed by a specified time and at a specified price; estimates were to be made by the engineers and acquittances executed by the plaintiffs. Much of the work was done under the contract, and the road partly finished and partly paid for, but the plaintiffs failing to complete it in the time specified, they continued the work with the consent of the defendant, until it was completed, or accepted as completed by the defendant's engineers having the supervision and control of it, and final estimates made and rendered. HELD:

    That the plaintiffs can recover, in assumpsit, under the common counts.

5. A party ought not to be heard to complain, that the court would not stul-

*See page 1.   Judge Dille of the II. Circuit was called to the bench.

tify itself by giving, at his instance, instructions which contradict each other, and thus confuse rather than enlighten the jury.

6. It is as competent for a jury to investigate fraud as a chancellor; the evidence to sustain *actual* fraud must be the same, in substance and effect, in one form that it is in the other.

7. An instruction is void for uncertainty, and ought to be refused as calculated to confuse the jury, when it contains a bare assertion that if the jury believed the work and labor was done by the plaintiffs under a special contract, without averring a condition precedent, or that it was still open and subsisting; or whether the evidence stated in the bill of exceptions tended to show whether the contract had been completed or rescinded, or whether the work done under the contract, not in accordance with its provisions, and yet it being beneficial to, had been accepted and appropriated by the defendant.

8. A case, in which from great discrepancies in calculations and estimates, a jury was justifiable in presuming fraud, and a motion to set aside a verdict and grant a new trial, because the verdict was contrary to evidence, was properly refused.

*John* and *William G. Lafferty*, partners under the firm and style of *J. & W. G. Lafferty*, brought an action of assumpsit in the circuit court of *Ohio* county, in June, 1853, against the Baltimore and Ohio Railroad Company, claiming 25,000 dollars damages.

The declaration contained the usual *indebitatis assumpsit* count, and an *insimul computassent* count. Issue was joined upon the plea of *non* assumpsit. The cause was tried at the spring term 1854, and the jury rendered a verdict for the plaintiffs, assessing damages at 15,307 dollars and 60 cents, with interest from the 20th day of December, 1852. The defendants moved for a new trial, which was refused, and the cause was carried to the Court of Appeals of Virginia, on a bill of exceptions taken to the refusal of the circuit court to give certain instructions to the jury; and in July, 1858, the following order was entered:

"This day came again the parties by their attorneys, and the court having maturely considered the transcript of the record of the judgment aforesaid, and the arguments of counsel, is of the opinion that the said circuit court erred, in refusing to give the second and third instructions asked for by the defendant in said court, and in giving certain

other instructions in lieu thereof. The second ought to have been given with an addition thereto, basing it upon the further belief of the jury that " a final estimate was made according to the said contract and without fraud; and the third ought to have been given in the form in which it was asked for, or both ought to have been given in the form and to the effect following, to wit:

"If the jury believe from the evidence, that the contract offered in evidence was entered into between the parties; that the work, &c., set out in the first count of the declaration was done, &c., under and by virtue of that contract, and that a final estimate was made according to the said contract and without fraud, then the plaintiffs are not entitled to recover under the said first count—

"1st. Without proving that before the action was instituted, they gave or offered to give to the defendants, upon receiving the balance appearing to be due upon the said final estimates, a release under seal from all claims, or demands, whatsoever, growing in any manner of the said contract.

"Nor, secondly: If the jury believe from the evidence that before the action was instituted, the amount of said final estimate was paid by the defendant to the plaintiffs.

"Therefore, and for reasons stated in writing and filed with the record, it is considered that the said judgment be reversed and annulled, and that the plaintiff in error recover of the defendants in error its costs by it expended in the prosecution of its writ aforesaid here.

"And this court, proceeding to give such judgment as the said circuit court ought to have given, it is further considered that the verdict of the jury be set aside, and the cause be remanded to the said circuit court for a new trial to be had therein, which is ordered to be certified to the said circuit court of *Ohio* county."

The cause was again tried in the circuit court of *Ohio* county, at the June Term 1860, and a verdict returned for the plaintiffs, the damages being assessed at 10,600 dollars with interest from the 1st day of December, 1852.

On motion of the defendant, the verdict of the jury was

set aside and a new trial granted on the usual conditions. At the Fall term of 1860, the venue was changed to *Brooke* county.

A trial was again had at the June Term 1865, and the jury again found a verdict for the plaintiffs, assessing their damages at 12,417 dollars and 78 cents, with interest from the 20th day of December, 1852. The defendant moved the setting aside of the verdict and granting of a new trial, but the court overruled the motion, and entered judgment upon the verdict.

On the trial of the cause, the plaintiffs read in evidence to the jury a contract between themselves and the defendant, dated January 20th, 1851, which stated that they agreed to grade, and prepare for laying down a track for a railroad that the defendant was constructing from Baltimore to the Ohio river, two sections, Nos. 161 and 162. Among other stipulations, the excavation was divided into three kinds, earth, loose rock, and solid rock, and was to be paid for at a specified price per cubic yard; the masonry was likewise classed under several heads, and the width of gradation and a great variety of other particulars were specifically set forth; the whole to be under the immediate supervision of a local engineer employed on behalf of the defendant: the plaintiff agreed to complete the contract by the 1st day of June, 1852. Monthly estimates of the progress of the work were to be made by the engineer, and of the quantity, character and value of the same, and four-fifths of such value was to be paid by the defendant at such place as the chief engineer should appoint; and when the whole work was completed and accepted by the chief engineer, there was to be a final estimate by the local engineer, and any balance appearing to be due the plaintiffs was to be paid them upon their executing a release under seal from all claims and demands under said agreement. It was further stipulated and understood, that the monthly and final estimates of the local engineer, as to quantity, character and value of work, should be conclusive between the parties to the contract, unless the chief engineer should deem proper

108          COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          B. & O. R. R. Co. vs. Lafferty.          1867.

at any time to revise and alter them, when his estimates should be substituted as to finality for those of the local engineer; that if the work was not completed by the plaintiffs within the time specified, or if the work did not progress with sufficient speed, the chief engineer might annul the contract, of which three day's notice was to be given, and thereby the plaintiffs forfeited the unpaid part of the value of work done, and the defendant was at liberty to enter and complete the work.

The circuit court certified that it was proved that the plaintiffs did a large amount of work and labor on the contract; that the monthly estimates were made by on *Benjamin D. Frost*, a local engineer designated by the defendant, and that in the autumn of 1851 his lodge took fire, and his books and papers were destroyed, and that the estimates for two or three months following were made by taking the force in men and horses employed by the plaintiffs and computing the amounts of the estimates by the quantities of work estimated to be done by such numbers of men and horses within such period; but, in the opinion of the witness, erroneously made. That by the aid of cross sections, made previous to the fire, and returned to the office of the division engineer, the local engineer *Frost*, proceeded to remeasure the work, and was enabled to reproduce the estimates which had been substituted by the computation of the work done by the force employed. It was also proven that the engineers of the defendant deemed it necessary to reconstruct a portion of a county road on the line of the sections of railroad being constructed by plaintiffs, and that a sum less than 500 dollars was allowed them by the engineers for so changing and reconstructing, whilst it cost them over 1,700 dollars, in the opinion of witness, who was the book-keeper of plaintiffs whilst on the work. That in making the final estimates, the local engineer made two estimates, the one based on the force employed, and the other on the remeasurements in connection with the aid of cross sections and other returns that had been made to the office of the division engineer; that they differed in amount

and were submitted to the chief engineer, who returned them to the local engineer, with instructions to adopt that most favorable to the plaintiffs. That the estimates made by the local engineer were approved by the division engineer, *Charles P. Manning*, and chief engineer, *B. H. Latrobe*, and were believed by them to be correct, although they made no actual measurement. That the local engineer was believed to be competent and skillful by the defendant when employed, and was a man of honesty and integrity; that the plaintiffs did not complete the work within the time specified, and that a portion of it never was done by them, but that the residue was done by employees of the defendant, and in the settlement of the account for work done under the contract, the cost of the work thus done was charged to the plaintiffs, and the residue of the amount due them, according to the estimates of the defendants engineers, was paid to them before the institution of this suit.

It was also proven that the whole amount paid the plaintiffs, during the progress of the work and upon its completion, exceeded the amount appearing to be due them, according to the estimates of the defendant's engineers.

The plaintiffs proved by five witnesses, *De Hass, Callan, Hays, Coletart* and *Everhart,* all of whom were experienced civil engineers, that shortly after the work was completed, they had gone upon it and made measurements and calculations, which greatly exceeded the estimates of the company's engineers. *De Hass* and *Callan* had made the measurements together, but their calculations, which corresponded, were made separately; the others had gone separately upon the work, and none of them remained longer than four days—all at the instance of the plaintiffs. It was certified by the court that the amount of work done by the plaintiffs, according to the measurements, classifications and specifications of the five engineers, *De Hass* and others, or either of them, would at the contract prices stipulated, exceed the amount estimated and paid to the plaintiffs by the defendant, during the progress of the work and at its com-

110     COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,     B. & O. R. R. Co. vs. Lafferty.     1867.

pletion, by more than the amount of the verdict rendered in the cause.

The defendants proved by *B. H. Latrobe, Charles P. Manning* and *Oliver B. Green*, engineers, that in their opinion, after a period of six months had elapsed from the completion of the work, that the most skillful and industrious engineer could not make measurements and classifications that would be at all reliable in less than three weeks; and by witness *Latrobe*, who heard the examination of *De Hass*, that it was apparent that he had made his estimates and classifications from the upper line of the road cuts and side cuts, instead of the central line, as the road was actually located and constructed, which would lead to erroneous results, and swell the estimates greatly beyond the amount of work actually performed. It was proved by the plaintiffs that during the progress of the work the location of the road appeared to be changed and carried further into the hill, whereby the labor performed by the plaintiffs was considerably increased, especially in the excavation of solid rock; and that in the opinion of the witness, engineer *Frost* must have taken the amounts of the various kinds of excavation from the profile of the road as originally located, and not from a proper profile of the road as actually constructed.

The court certified that no evidence was offered to impeach the veracity, or impugn the credibility of any witness on either side; and no evidence to impute fraud to engineer *Frost* or chief engineer *Latrobe*, other than such, if any, as was to be deduced from discrepancy between the two final estimates made by *Frost*, and the differences in amount between his estimates and those made by the witnesses examined by the plaintiffs upon the measurements, classifications and calculations made by them respectively.

The defendant moved the court to instruct the jury as follows:

"1st. That if the jury believed from the evidence that the said work done by the plaintiffs for the defendant was done under special contract between them, which remained in full force, and which ascertained the price to be paid for

such work, the plaintiffs have no right to prove the value of said work by evidence other than that of said contract, and recover according to the value thus otherwise proved, but can only recover the prices thereof as fixed by the said contract, upon proving that the conditions of the said contract had been complied with, and that nothing remained to be done in execution of them but the payment of the price by the defendant.

"2d. That if the jury believe from the testimony that the said work in the said declaration mentioned was done under said written contract, and that a final estimate of the work done was made by the company's engineers, fairly and without fraud, according to said contract, the plaintiffs are not entitled to recover in this action, without proving that before the same was instituted they gave or offered to give to the defendant, upon receiving the balance, if any, appearing to be due on said final estimates, a release under seal from all claims or demands whatsoever growing in any manner out of said contract.

"3d. That if the jury believed from the evidence that the said work in the declaration mentioned was done under said contract, dated as aforesaid, and that in accordance with said contract final estimates of the work done under the same were made by the engineers therein designated to perform that duty, and further that the amounts of said final estimates had been paid to the plaintiffs before the institution of this suit, then they ought to find for the defendant on the first counts of the declaration, unless they further believed from the testimony that there was fraud or intentional misconduct on the part of the engineers making up such final estimates.

"4th. That the fraud and intentional misconduct referred to in said third instruction cannot be shown by evidence exhibiting different estimates of quantity and classification of work, unless the jury shall believe from the evidence that the estimates of quantity and classification, as made by the defendant's engineers, were made unfairly and corruptly,

112    COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,    B. & O. R. R. Co. vs. Lafferty.    1867.

with intent on the part of the engineers making them to defraud the plaintiffs.

"5th. That if the jury believe from the evidence that the work set out in the declaration was done under the said written contract, dated as aforesaid, and given in evidence in this cause; and that estimates final in their character had been properly made of the whole work so done by the plaintiffs, by the engineers of the defendant, and if they shall find that the plaintiffs had submitted themselves to the action of the engineers designated in said contract, both as to the monthly estimates and final estimates therein provided, in every particular, except that they objected to the final estimates, when made known to them, then in the absence of proof of any fraud or other intentional misconduct on the part of said engineers, the jury can only find for the plaintiffs, under the first counts of the declaration, upon the basis of taking said final estimates to be conclusive between the parties.

"6th. That if the jury believe from the evidence that the said contract dated the 20th January, 1851, was entered into by and between the plaintiffs and the defendant, and that the plaintiffs did work and labor for the defendant upon said sections of its road mentioned in said contract, and that the work and labor so done is the same for which recovery is sought in this action, the plaintiffs are not entitled to recover upon the declaration in this case, even although the jury should believe that the said estimates of the work made by the engineers of the company were unfair and fraudulent.

"7th. That if the jury should believe that the said written contract was made by and between the plaintiffs and the defendant, and that the plaintiffs did work and labor for the defendant under the same, and that the said work and labor is the subject matter of this suit; yet that the plaintiffs are not entitled to recover from the defendant upon the declaration in this cause, even although the jury should believe that no sufficient final estimate of the quantity, character and value of the work so done was made by the local engineer or chief engineer of the defendant.

"8th. That the fraud or corrupt misconduct, referred to in previous instructions as serving to vitiate the estimates of the defendant's engineers, is not to be presumed from mere errors or mistakes of said engineers, if any such shall be shown to have been made by them, nor from variances between different estimates of the same work made at different times, nor from any variances which shall appear to exist between the estimates made by them, as to quantities and classification of work, and those made by other engineers or witnesses in this cause, unless the jury shall believe that the engineers of the defendant, in making their estimates, acted corruptly and unfairly and with intent to defraud the plaintiffs, by reducing improperly and unjustly the amounts which they were entitled to receive for their work under said contract.

"9th. That the fraud or intentional misconduct on the part of the said engineers, which shall serve to vitiate the estimates made by them, must be made out to the satisfaction of the jury by evidence clearly irreconcilable with *bona fides* and an honest purpose on the part of said engineers, and that the jury must be well satisfied of the evidence of such fraud or misconduct on the part of said engineers, before they will be justified in disregarding the final estimates made by them of the value of said work."

The court gave all the instructions except the sixth and seventh, which were refused, and the defendant excepted.

The cause came here on a writ of supersedeas.

*Geo. H. Lee* and *C. Boggess*, for plaintiffs in error, insisted on the following points:

1. That the court erred in refusing to give the 6th instruction asked for. If through the corruption of the engineer the estimates made by him were unfair or fraudulent, they could not be avoided for that cause in an action at law. The remedy of the plaintiffs was by bill in equity, to set them aside and give the proper relief.

2. That the court erred in refusing to give the 7th instruction asked for by the petitioner. The contract being spe-

cial, and the work never having been fully completed by the plaintiffs, and the required release never having been given, the plaintiffs were not in a condition to sue in *indebitatus assumpsit.* There remained something to be done on their part, and it was not a case in which the contract was fully performed on one part and nothing remained on the other but the payment of the price agreed on.   It is clear, therefore, according to the well-settled rule of law recently recognized by this honorable court, that the plaintiffs were bound to declare upon the special contract, and aver their excuse for not performing the conditions upon which payment was to be made them according to the terms of the contract.

3. The court erred in giving the instruction which it did give on the prayer of the plaintiffs.

4. The court erred in refusing to set aside the verdict and grant a new trial of the cause.   Taking all the facts and evidence in the cause and giving to them their widest latitude and fullest weight, there is not the slightest ground upon which to impute *fraud, corruption, or intentional misconduct* on the part of the engineer in making the estimates. The verdict is, then, plainly contrary to the facts and evidence in the cause.   It is also in direct contravention of the instructions given by the court to the jury.   The court instructed the jury that they could not find for the plaintiffs unless such fraud or corruption was clearly proven; and that it was not to be inferred from mere errors or mistakes of the engineer, if any such were made, nor from mere discrepancies between different estimates of the same work made by the same engineer, nor from variances between his estimates and those of other engineers, unless the jury should be satisfied that his estimates were made corruptly and unfairly and with intent to defraud the plaintiffs.   And in its certificate of the facts proved upon the trial, the court states that there was no evidence tending to impute fraud or corruption to the engineer except the supposed discrepancies and variances.   The verdict was therefore in plain disregard of the instructions of the court, and should for that cause have been set aside.

5. The court should have set aside the said verdict, and

granted a new trial, for misdirection. The 6th and 7th instructions having been improperly refused the court should have corrected its error by awarding the new trial asked for.

*Wm. McKennan* and *N. Richardson*, for defendants in error.

BROWN, President.

Several points are made for the determination of the court. And 1st, Whether an action can be maintained on the common counts in assumpsit for work and labor, care and diligence, done under the following circumstances, viz: the parties, plaintiffs and defendant, had entered into a special contract, by which the plaintiffs were to make sections 161 and 162 of defendants' railroad, in a special manner, under the supervision and control of the defendants' engineers, to be completed by a specified time and at a specified price; estimates thereof to be made by said engineers, and acquittances executed by plaintiffs before payment. Much of the work was done under the contract and the road partly finished and partly paid for, but the plaintiffs failing to complete the same in the time specified, they continued the work with the consent of the defendant, until the same was completed, or accepted as completed by the company's engineers having the supervision and control thereof, and final estimates made and rendered.

The declaration contained no special count on the special contract, but the common counts only. And it was objected for the railroad company, the plaintiff in error, but defendant in court below, that the action could not be maintained on the common counts, and that the parties should have declared specially, on the special contract, and aver performance, or failure to perform by the act of the other party.

But it is very manifest that this could not have been done, for the contract had not been performed by the plaintiff in error, neither had it been prevented performing it by the other party. And if no remedy could be had on the common counts, then the parties doing the work were without remedy altogether, notwithstanding the work had been done

and continued at the request of the plaintiff in error, and was useful to and appropriated by the said company. The law is correctly stated by Mr. Greenleaf in his work on Evidence, vol. 2, sec. 104, where he deduces from the authorities three *general rules:*

1. So long as the contract continues *executory* the plaintiff must declare specially; but when it has been *executed* on his part, and nothing remains but the payment of the price in money, by the defendant, which is nothing more than the law would imply against him, the plaintiff may declare generally, using the common counts, or may declare specially on the original contract, at his election.

2. Where the contract, though partly performed, has been abandoned by mutual consent, the plaintiff may resort to the common counts alone for remuneration for what he has done under the special agreement.

3. When it appears that what was done by the plaintiff, was done under a special agreement, but not in the stipulated time or manner, and yet was beneficial to the defendant and has been accepted and enjoyed by him; here the plaintiff cannot recover upon the contract from which he has departed, yet he may recover upon the common counts for the reasonable value of the benefit which, upon the whole, the defendant has derived from what he has done.

I think it clear, therefore, that the plaintiffs in the court below, might well, in the case supposed in the defendant's first bill of exceptions, have sustained their action upon the common counts. Also *Newman* vs. *McGregor*, 5 Hammond, 349; *Baltimore & Ohio R. R. Co.* vs. *Polly Woods & Co.*, and *same plaintiff* vs. *Lafferty*, 14 Gratt.

Again, the defendant in the court below asked the court to give to the jury nine instructions propounding propositions of law affecting the case, as it claimed, all of which the court gave, except the two numbered 6 and 7, which the court refused to give, to which refusal the defendant excepted, and the same are here assigned as errors. Said 6th instruction, divested of its circumlocution, propounds simply and substantially this proposition, that, the plaintiffs

below could not recover on the common counts for the work and labor done under the circumstances and as stated in the said first bill of exceptions, even though the jury should believe that the estimates of the work made by the engineers of the company were fraudulent.

It is based upon the assumption that the engineers' estimates are conclusive upon the plaintiffs below, however fraudulent they may be, and that the question of fraud cannot be tried by the jury in an action at law, but that, a court of equity alone is competent to investigate the subject of fraud.

The first objection to this instruction is, that it is inconsistent with the third instruction asked by the defendant below and so given by the court. This third instruction told the jury, in effect, that they might find for the plaintiffs below, if the engineers' estimates were fraudulent; but this sixth instruction says, in effect, that the jury may not find for the plaintiffs below, notwithstanding the said estimates were fraudulent.

A party ought not to be heard to complain that the court would not stultify itself, by giving at his instance, instructions, which contradicted each other, and thus confuse, rather than enlighten the jury upon the law in the case. It is certainly a reprehensible practice and condemned by the case of *Lazzell* vs. *Maple*, 1 W. Va.

But suppose the said third instruction had neither been asked by the defendant below, nor given by the court, the question would still recur: was the law correctly propounded in the said sixth instruction? If not, it was rightly refused, and therefore, the refusal, no just cause of complaint. This sixth instruction proceeds upon the hypothesis, that the estimates of the engineers are, in nature and effect, awards of arbitrators; and as awards may not be questioned for fraud, save in a court of equity, so neither can these estimates of the engineers be otherwise dealt with. But the analogy between them is not complete. *Baltimore & Ohio R. R. Co.* vs. *Polly Woods & Co.*, 14 Gratt., 463. The reason for investigating the fraud before a jury,

is as strong as before the chancellor, and the former is no less competent than the latter to determine it. It saves circuity of action, avoids delay, and lessens the expense, and whether in one forum or the other the evidence to sustain the charge of actual, not constructive, fraud, must be the same, in substance and effect. 16 Penn. State Rep. is authority express upon the point and is strongly corroborated by the opinion of the court delivered by judge Moncure in the case of the *Baltimore & Ohio R. R. Co.* vs. *Polly Woods & Co.*, 14 Gratt., 463; 9 Peters, 319; 11 Gill & John., 58; 27 Vermont, 673.

I think, therefore, that there was no error in refusing the said sixth instruction.

The said seventh instruction propounds this proposition: that the work and labor sued for, were done under the writ-ten contract, no recovery could be had on the common counts, whether any final estimate thereof had been made by the company's engineers or not.

It is based on the assumption before considered and disapproved, that no recovery can be had for work done under a special contract unless the contract be specially declared on. It is objectionable also because the view which it presented, viz, that if the work was done under a written contract, the terms of the contract must be complied with before a recovery could be had, had been given to the jury, at the defendant's instance in each of the five instructions, which preceeded it, and it was not an error in the court to refuse to repeat it again. But it was also objectionable in not going far enough to avoid ambiguity and was thereby calculated to confuse and mislead the jury. Had this instruction, by its terms, been confined to work done under a written contract, which was still open and subsisting, it would not have been obnoxious to this objection of uncertainty, and in such case, if the contract made any particular thing a condition precedent, no action could be maintained until the condition had been performed. But this instruction is based on the single averment that the work was done under a written contract, leaving it wholly uncertain whether the

contract was executory or executed, whether it was still open and subsisting, or whether, as the evidence stated in the bill of exceptions tended to show, that the contract had been completed, or rescinded; or whether the work, though done under the contract, not in accordance with its provisions, and yet being beneficial to the defendant had been accepted and appropriated; in which latter event no estimates of the company's engineers could be required as a condition precedent, to enable the plaintiffs to recover, any more than it would require a special count on the special contract, instead of the common counts.

Again, this seventh instruction is almost identical with the first instruction in the case of *Baltimore & Ohio R. R. Co.* vs. *Polly Woods & Co.*, 14 Gratt., 447, and also with the first instruction asked by the same company against Laffertys on a former appeal in this very case, 14 Gratt., 478, but the court below refused to give them, and the refusal was excepted to, and the court of appeals of Virginia held that the court below did not err in such refusal.

I think, therefore, that the court below was warranted in refusing to give the said seventh instruction also.

The next question to be considered grows out of the refusal of the court to set aside the verdict and award the defendant a new trial. It is claimed for the defendant below, that a new trial should have been granted on two grounds: 1st, for misdirection by the court, and 2nd, because the verdict is contrary to the evidence.

The first ground has been in effect disposed of, in considering the objections to the sixth and seventh instructions, and need not be repeated in this connection. Upon the second ground it may be remarked, that as respects the amount ascertained by the verdict, there is a conflict of evidence and this court will not stop to inquire which preponderates or which set of witnesses is the most credible; that was peculiarly the province of the jury. But it is maintained for the plaintiff in error, that the verdict can only be sustained upon the hypothesis of fraud in the company's engineers in making out the estimates of the work done, and that there

is no evidence of such fraud. And on this point the court below certifies in the second bill of exceptions briefly and substantially that there was no evidence of fraud in said final estimates, other than such as was to be deduced from the discrepancy between the two final estimates by the engineer, Frost, and the differences in amount between the said Frost's estimates and those made by the engineers examined by the plaintiffs below. The court also certifies that the amount of work done, would, at the contract price, exceed the amount estimated and paid to the plaintiff below, during the progress of the work and at its completion, by more than the amount of the verdict, which was for 12,417 dollars and 78 cents. The work done was excavation and removal of earth, loose rock and solid rock, and at prices specified per cubic yard. And an approximation to the amount of work thus done is easily ascertained, so far as to show whether the discrepancy was small or great, in other words whether it was such as might be accounted for by reason of errors and mistakes in the measurement or calculations, which are always liable to enter into estimates of like character, or whether the discrepancy was great, the error so glaring as to preclude under the circumstances, the idea of errors of ignorance, inadvertence or mistake, and which could only be rationally accounted for on the ground of a corrupt motive in the local engineers making the estimates, with the intent to defraud the plaintiffs below.

When the verdict is viewed in the light of the instructions, and the facts as certified by the court, it is manifest that the jury came to the conclusion that the said estimates of the company's engineers were fraudulent and so based their verdict upon such conclusion. It is equally clear that, that conclusion was a deduction from the facts and circumstances proved in the cause, potent among which, were the discrepancies aforesaid.

It is equally clear from the court's certificate of the fact that the mind of the judge, who presided at the trial, was influenced by the same considerations to refuse to set aside the verdict.

The glaring discrepancy also between the estimate of the engineer, Frost, for the piece of county road made by the plaintiffs, viz, 430 dollars and 88 cents, and the actual cost, viz, 1,700 dollars and upwards, is another circumstance of much weight in considering this subject.

These great and extraordinary discrepancies tested by calculations based on the facts in the cause, exhibit results, which it is difficult to reconcile with the idea of honest errors or casual mistakes. As the estimates of the local engineer, were carried into the estimates of the division engineer and his again into the final estimate of the principal engineer, then, however honest the division and principal engineers, and innocent of any knowledge of the errors and taint of the preceding estimates, yet the final estimate would, nevertheless, be equally obnoxious, as the one on which it was based.

The question is whether upon the whole case the verdict is contrary to the evidence and should therefore be set aside; nor is the fact to be overlooked that this is the third verdict for about the same amount that has been rendered in this cause.

Upon a careful consideration of the case and review of the authorities on the subject of new trials, I am satisfied that this is not a case in which the appellate court would be justified in disturbing the verdict of the jury.

From the reasons above stated, I am of opinion that the judgment of the circuit court of Brooke should be affirmed, with costs to the defendants in error.

The other judges concurred with the President.

JUDGMENT AFFIRMED.