# CHARLESTON.

GROSS *v.* LEWIS & SCHMIDT.

| 54 | 433 |
|----|----|
| f63 | 509 |

Submitted September 10, 1903—Decided December 16, 1903.

1. CONTRACT—*Refusal to Perform.*

   If during performance of a contract, or after the time for performance arrives, one of the parties, by word or act, openly and clearly refuses to perform his promise in whole or in part, the other party is thereupon exonerated from performing his part of the contract. (p. 440).

2. DECREE—*Justification.*

   When a court, by its decree or judgment, deprives one person of his money or property to be paid or delivered to another, such action should be warranted by sufficient legal justification, *Held*: In this case, the evidence does not support the decree. (p. 440).

Appeal from Circuit Court, Tucker County.

Bill by George W. Gross against James Lewis and Peter W. Schmidt. Decree for plaintiff and defendants appeal.

*Reversed.*

E. D. TALBOTT and WAMSLEY & COBERLY, for appellants.

C. H. SCOTT, for appellee.

MILLER JUDGE:

George W. Gross, at the August rules, 1899, filed his bill in chancery in the clerk's office of the circuit court of Tucker County, against James Lewis and Peter W. Schmidt. Plaintiff also sued out in said cause an attachment against the estate of said defendants, which was, by the sheriff of said county, levied upon a tract of land situated in the county aforesaid, described as

containing four hundred and ninety-seven acres. Both the bill and affidavit for the attachment aver that the defendants are non-residents of this state. The bill alleges that the defendants are indebted to the plaintiff in the sum of three hundred and twelve dollars and fifty cents; that theretofore, to to-wit: on the 14th day of February, 1898, the plaintiff and defendants entered into a contract whereby defendants sold to plaintiff all the hemlock timber on the Haddix Run side of a certain tract of land, owned by them, containing four hundred and ninety-seven acres, situated on Haddix and Clover Runs in Tucker County, fully described in a deed of conveyance by Charles W. Mayer to defendants, bearing date on the 18th day of June, 1889. A copy of the deed is filed with, and made part of, the bill. The plaintiff further avers that the contract price for the said timber on said lands, was fifty cents per thousand feet; that he took possession of said timber, and, in May, 1899, sold the same to A. McCauley, at the price of one dollar and twelve and one-half cents per thousand feet; that immediately after he entered into the contract for the sale of said timber to McCauley, and when said McCauley was about to begin the manufacture of said timber into lumber, the defendants repudiated the sale made to plaintiff by them, and refused to allow McCauley to carry out his contract with plaintiff for the purchase of said timber; that defendants, without any cause whatsoever, repudiated and refused to comply with their contract with him for the sale of the timber, and prohibited him from selling said timber to McCauley, or any one else, and prevented him from cutting, and causing said timber to be cut, and sold, and the funds to be realized thereon by plaintiff at the price of one dollar and twelve and one-half cents aforesaid, whereby plaintiff would have made the profit of sixty-two and one-half cents per thousand feet, upon the whole quantity of said timber; that there was on the said land five hundred thousand feet of hemlock timber, bought by him from the defendants as aforesaid, and by him sold to McCauley, at the price aforesaid; and that he has been damaged in the sum of three hundred and twelve dollars and fifty cents, by reason of the refusal of defendants to carry out their said contract with him, and because defendants prohibited him from delivering said timber to McCauley. The plaintiff also alleges that the defendants are the owners of said four hundred and

ninety-seven acres of land; and further says that defendant, James Lewis, who was then, and still is, the owner of the undivided half of said four hundred and ninety-seven acres, did, on the first day of November, 1895, convey his said interest therein by deed to his co-defendant, Schmidt, for the pretended consideration of fifteen hundred dollars cash; but plaintiff charges that no consideration was paid, or to be paid, by Schmidt to Lewis for said land; that said conveyance was made in fraud and without any consideration. The plaintiff prays that he may have a decree to subject said land to the payment of his said demand of three hundred and twelve dollars and fifty cents with interest thereon, and the costs of his suit; that said deed from Lewis to Schmidt to be set aside and canceled as to his demand; and that the said land be sold, to satisfy the same.

The deed from said Charles W. Mayer and his wife to said Lewis and Schmidt, bearing date as aforesaid, for said four hundred and ninety-seven acres of land, reserves on its face a lien upon said land in favor of Mayer to secure the payment of two notes for five hundred dollars each, executed by the defendants, bearing the same date as the said deed, and payable to Mayer, on the first day of January and July, respectively, 1890, being for parts of the purchase money for the land; but Mayer is not made a party to said cause.

On the 23rd day of November, 1899, the said circuit court entered a decree in the cause, reciting that it was heard upon the bill and exhibits, the order of publication as to the defendants, and the order of attachment against the property of the defendants, levied as aforesaid. The decree then finds that there is due the plaintiff from the defendants the sum of three hundred and twenty dollars and thirty-one cents, and declares the said sum to be a lien upon the tract of four hundred and ninety-seven acres of land. "And it appearing that the said defendant Lewis hath conveyed his half interest in the said tract of land to his co-defendant Peter W. Schmidt, which conveyance is without consideration and fraudulent and void as to the said debt of the plaintiff, and to that extent be set aside, canceled and annulled." The decree further provides for a sale of the land, in default of the payment of the sum decreed, against the defendants.

On the 7th day of March, 1900, the defendants tendered to

the court their petition, accompanied by proper bond, praying that the proceedings in said cause might be reheard, which petition and bond were accepted by the court and filed, the bond approved, and said defendants permitted to make defense, as in such case is provided by statute.

Defendants' petition seems to have been intended for, and treated as, their answer to the bill. This could be done, so far as it contains proper matter for an answer. *Sturm* v. *Fleming,* 22 W. Va. 404. It specifically denies every material allegation of the bill. The defendants aver therein that it is not true that petitioner, Lewis, without any consideration, or with any fraudulent intent, conveyed his one-half interest in said tract of four hundred and ninety-seven acres of land to Schmidt, but it is true that said Mayer, on the 18th day of June, 1889, conveyed said tract of land to petitioners; that on the first day of November, 1895, petitioner, Lewis, conveyed to Schmidt his moity of the same, and that Schmidt paid him for it. They further deny that Lewis is a joint owner of said tract of land in equity or otherwise. A copy of said last mentioned deed is in the record, from which it appears that it was duly admitted to record in the county of Tucker on the 5th day of February, 1896. Depositions for both plaintiff and defendants were taken and filed in the cause.

The plaintiff, in answer to the question, "State whether you purchased the hemlock timber and bark on that certain tract of land, containing four hundred and ninety-seven acres on Haddix Creek, Tucker County, owned by the defendants, about February, 1898, if so, state at what price, and all about it," said, "Why I did purchase it, I purchased all the hemlock on the Haddix Creek side of the survey at fifty cents a cord for the bark and fifty cents a thousand for the timber." Witness further stated: "I just made the offer of fifty cents a thousand for the timber, and fifty cents a cord for the bark." In answer to another question as to the quantity of the timber and bark on that part of the tract of land, tribuary to this Haddix Creek, plaintiff further stated, "I think there was about six hundred thousand feet of the hemlock timber. Somewhere close to two hundred and fifty cords of bark. I sawed about two hundred and fifty thousand feet of timber off of that part of the tract, for I. H. Rinard. I estimate the balance of it in a rough way at three hundred and

fifty thousand feet; but there was more than that. I made this estimate when I was peeling the bark off of it." The witness further stated that he had sold the timber, purchased from the defendants, on the 5th day of May, 1899, to A. McCauley, at one dollar and twelve and one-half cents per thousand in the tree. He filed a copy of a contract in writing with McCauley, dated May 5, 1899, showing that, in consideration of one dollar and twelve and one-half cents per thousand feet, he had sold to McCauley all the hemlock, poplar, red oak and white oak timber on the Haddix Creek side of the Mayers tract of land, owned by P. R. Schmidt. He also testified that Lewis sold the timber to I. H. Rinard; that Lewis told him that he could not cut the timber; that he notified McCauley what Lewis had done; that McCauley then tore his signature from the said contract with plaintiff; that, by his contract, he was making sixty-two and one-half cents per thousand feet on the timber, and that he had cut the timber all down. Plaintiff also filed several letters addressed to him, signed by James Lewis, all purporting to have been written at McKeesport, Pennsylvania. The first is dated January 7, 1898, in which Lewis says: "I seen Schmidt about the bark and hemlock I couldn't do any better with him than you offered he wants to know how he is to git his money. You state in the next letter that you will pay him as you get the money out of it" etc. The next letter is dated January 26, 1898, and says, "I seen Smith about the hemlock. I have told him that it had better be sold he has agreed to sell it. Let me know what you can give for the hemlock and bark (hemlock) by the thousand and the bark by the cord or what you will give for the hemlock by bulk" etc. Another letter dated February 14, states, "that is all right about the pay. You git at it, and git it off this year," and the last letter dated February 21, 1898, says, "You can do as you like with the Tannery about the pay for the bark. Will leave that to you" etc. No specific time of payment appears to have been agreed upon by the parties for the hemlock timber.

The defendant, James Lewis, testifies that he sold to Gross the hemlock timber on Haddix Creek for �• fifty cents per thousand for the timber, and fifty cents per cord for the bark; that Gross was to cut the timber; that the sale was in the early spring of 1898; that Gross cut down part of the hemlock tim-

ber, and peeled the bark off of what he cut down; that he picked out and went through the best part of the timber; that he had been told by Gross, that Gross' had sold the timber to McCauley; that he objected to Gross making sale of the hardwood timber to McCauley, because he had sold no hardwood timber to Gross; that he made no attempt whatever to stop the sale of the hemlock timber; that by the term, "hardwood timber," he meant poplar, oak, chestnut, beech, birch, and all, except the hemlock; that Gross had no right to sell, and had no claim 'whatever, on the poplar, red oak and white oak timber mentioned in his contract with McCauley, dated May, 1899; that afterwards Gross told witness that he would throw up his contract for the bark and hemlock; that witness could work it, sell it, or do as he pleased with it, as he (Gross) would have no more to do with it. "I received it from him. He told me I could have it." Afterwards, witness sold the hemlock and hardwood to I. H. Rinard. Witness further testifies that he never, at any time, refused to allow Gross to cut the hemlock timber; that Gross did not object to the sale of the hemlock timber by defendant to Rinard; and that Gross afterwards sawed a part of it for Rinard.

Samuel W. Gainer swears that Gross told him that he had thrown up his contract with Lewis and was not going to have anything more to do with it; that he had sent him word that he wasn't going to handle his timber; that it was the hemlock timber referred to. W. D. Murphy states that Gross told him in May, 1899, that he had given up the contract betwixt him and Lewis for Lewis' hemlock timber. He (Gross) said Mr. Lewis could take the timber and do what he pleased with it; that he didn't' care if it lay there and rotted. He would have no more to do with it. H. H. Cross testifies that Gross told him that he had thrown up the contract between himself and Lewis and would have no more to do with it. I. H. Rinard says that he purchased the hemlock timber on Haddix, theretofore sold by Lewis to Gross; that there was about four hundred thousand feet manufactured by him on the four hundred and ninety-seven acre tract.

Gross was recalled and denied that he threw up his contract for the timber; or that he ever stated to witnesses Gainer, Murphy or Cross that he had done so. He further stated that he had a verbal contract whereby he was to have all the hardwood, on the part of the tract tributary to Haddix Creek.

On the 15th day of June, 1903, the said cause was again heard upon the plaintiff's bill, and exhibits filed therewith, upon the order of publication against the defendants, order of attachment levied upon the four hundred and ninety-seven acres of land, the said petition of defendants, the depositions taken and filed as aforesaid, and upon the former orders made and entered. On consideration whereof it was adjudged, ordered and decreed that the plaintiff should recover from the defendants, James Lewis and Peter W. Schmidt, three hundred and eighty-five dollars and thirty-one cents with interest thereon from the 15th day of June, 1903, and the costs of said suit.

"And it appearing that the said defendant James Lewis hath conveyed his half interest in said tract of land to his co-defendant, Peter W. Schmidt, which conveyance is without consideration, fraudulent and void as to the said debt of the plaintiff, George W. Gross and to that extent is set aside, canceled and annulled." The decree then provides for a sale of said land, in default of the payment by defendants of the amount decreed against them, within a time given.

From the aforesaid decree the defendants obtained an appeal, and assign errors, which are to the effect that the said decree is erroneous, to their prejudice, and should be reversed.

From the foregoing statement it may be concluded that, on the 18th day of June, 1889, Charles W. Mayer and his wife, by deed of that date, conveyed to the defendants the said tract of four hundred and ninety-seven acres of land; that on the first day of November, 1895, Lewis conveyed his one undivided half interest therein to Schmidt; that said last mentioned deed was admitted to record in said county on the 5th day of February, 1896; that some time in the early part of 1898, plaintiff bought the hemlock timber and bark thereon, on the Haddix Run part of said tract of four hundred and ninety-seven acres of land; that no specific time of payment for the hemlock timber was agreed upon by the parties, and that nothing had been paid by Gross thereon; and that afterwards, he attempted to sell the said hemlock, and also the poplar, red oak and white oak timber on said parcel of said four hundred and ninety-seven acres to Rinard.

It is plainly evident that Lewis, at the time of the alleged sale

of the hemlock timber and bark to Gross, was not the owner thereof. In what capacity he was acting for Schmidt, is not shown, and is immaterial, because Schmidt does not repudiate that sale. It is equally as plain that Gross did not buy the "hardwood" on the land; and that he had no right thereto. The evidence upon which the court found the amount of damages in favor of the plaintiff is very vague and uncertain, too much so to be the basis of a decree against the defendants.

"I (the plaintiff) think there was about six hundred thousand feet of the hemlock timber." * * * "I sawed about two hundred and fifty thousand feet of timber off that part of the tract for I. H. Rinard. I estimated the balance of it in a rough way at three hundred and fifty thousand feet, but there was more than that. I made this estimate when I was peeling bark off of it." It will be borne in mind that Lewis sold to Rinard the poplar, red oak and white oak, as well as the hemlock, and Rinard says that there was four hundred thousand feet of hemlock timber on the four hundred and ninety-seven acre tract, which he manufactured. Gross had manufactured none for himself. When a court, by its decree or judgment deprives one person of money or property to be paid or delivered to another, such action should be warranted by sufficient legal justification. The proof is overwhelming that Gross abandoned his contract, and refused to perform the same. It is not contended that he had paid anything to defendants on the timber. He had cut part of the hemlock, but that was necessary for the purpose of removing the bark therefrom. Clark on Contracts, page 648, says: "It may also happen that in the course of performance of a contract, one of the parties may, by word or act, deliberately and avowedly refuse performance on his part. In such case the other party is exonerated from a continued performance of his promise, and is at once entitled to bring action." Defendants did not see fit to sue Gross, but sold the hemlock along with other timber to Rinard. On the evidence, the court should have found for the defendants. There is no proof whatever that the deed by Lewis to Schmidt was in fraud of any right of Gross or that it was intended to be so. As is shown, it was executed and recorded more than two years before the timber deal between Gross and defendants took place. A plaintiff who alleges fraud must clearly and distinctly prove the fraud alleged in his bill. *Arm-*

*strong* v. *Bailey,* 43 W. Va. 778. It was error to set aside and cancel said deed as to plaintiff's alleged demand. It seems to us that the circuit court, upon the hearing, should have abated the said attachment, and dismissed the plaintiff's bill.

For the reasons stated, the decree complained of is reversed and set aside, the attachment abated, and the bill dismissed.

*Reversed.*