# CHARLESTON

## ARMSTRONG *v.* ROSS.

Submitted June 15, 1906. Decided December 4, 1906.

1. SPECIFIC PERFORMANCE—*Sale of Realty—Executory Contract.*

Courts of equity enforce specific performance of executory contracts for the sale of real estate according to the true intent and meaning of the parties, as disclosed by the contract considered as a whole, and do not hold themselves bound by all the technical rules applicable to deeds, passing title, which have, for their foundation, reasons of public policy designed to give stability to legal titles. (p. 39.)

2. MINES AND MINERALS—*Sale of Coal Lands—Construction of Contract.*

A contract for the sale of real estate which, read in connection with deeds and other written instruments to which it refers, shows on its face that the subject of sale was a portion of a certain vein of coal lying partly under a certain tract of land, described and conveyed in the deeds to which the contract refers, and separately described and treated as coal in said deeds, as known to the parties to the deeds and contract, in point of existence, area, location and relative position, does not include other veins of coal in said tract of land which were not so known to them. (p. 40.)

3. SAME.

Such a contract is not ambiguous on its face, nor is a latent ambiguity therein disclosed by the discovery, in the application thereof to its subject matter, that there are other veins of coal in the land. (p. 40.)

4. EVIDENCE—*Parol Evidence—Written Contract.*

The fact that the area and location of the coal was known, disclosed by the terms of the contract, is a part of the written de-

scrivtion thereof, to be observed in applying the contract to the subject matter, and for the incorporation thereof into the contract, as an element within the intent of the parties, the aid of parol evidence is not necessary.  (p. 47.)

5.   VENDOR AND PURCHASER—*Contract—Rescission.*
Refusal of the vendee in an executory contract of sale of real estate, to perform the contract according to the true interpretation thereof, accompanied by an offer to perform in accordance with the vendee's own erroneous interpretation thereof, does not entitle the vendor to rescission.  (p. 48.)

6.   SAME.
To work a release of a contract, a refusal to perform it must be distinct, unequivocal and absolute, and must be treated and acted upon as such by the party to whom the broken promise or agreement was made.  (p. 48.)

Appeal from Circuit Court, Taylor County.

Bill by Adolphus Armstrong against E. L. Ross.    Decree for plaintiff and defendant appeals.

*Reversed.    Remanded.*

DENT & DENT, for appellant.

MOLLOHAN, MCCLINTIC & MATHEWS, for appellee.

POFFENBARGER, JUDGE:

E. Lodge Ross complains of a decree of the circuit court of Taylor county, requiring him to specifically perform a contract for the sale of certain coal in place, made between him and Adolphus Armstrong, in a manner greatly variant from his interpretation of the contract, but conforming exactly to that of the plaintiff, Armstrong.  The memorandum of the sale executed by Ross and delivered to Armstrong reads as follows:  "I sell to A. Armstrong the coal in the Barnes & Smith land bought by me under decree at last court.  There is to be 27 acres of the coal & if not that much coal in the land enough to come from the Smith adjoining land to make the 27 acres as in the deed of said George H. Smith to Jasper M. Smith.  For which Armstrong is to pay $500.00 & I am to make him a *genal* warranty Deed for the coal with the right to mine and remove the coal free of damage under the surface, and to air and drainage but he is not to have right of way or roads on the top or surface of the land on which to remove the coal.  E. Lodge Ross."

Their respective contentions make it necessary to set forth, with some degree of particularity, the documentary evidence, relating to the coal to which reference is made in the memorandum, which describes it as that which the vendor had bought "under decree at last court." That decree was made in a suit brought to sell the real estate of Jasper M. Smith, who acquired it, by conveyance, from G. H. Smith, to whom it had been conveyed by J. H. Barnes and wife. In the deed from Barnes to G. H. Smith, there was granted, to the latter, "A certain tract or parcel of land containing 38½ acres, lying in the waters of Black Creek in said county (Taylor) and ten acres of coal adjoining said 38½ acre tract." Each of said tracts was further described as adjoining the land owned by James W. Batson. The deed then described the 38½ acre tract of land, but not the ten acres of coal, by metes and bounds. The deed from George H. Smith and wife to Jasper M. Smith conveyed the 38½ acre tract, describing it by metes and bounds, as it was described in the other deed, and then conveyed the coal in the following terms: "And also twenty-seven acres of coal a part of the same underlying the said tract of land in case there should not be that quantity of coal underlying the said tract of 38¾ acres then the residue of the 27 acres of coal is to be surveyed from the coal of the said George H. Smith immediately adjoining the coal under the said 38¾ acres tract so as to make in all the said full quantity of 27 acres of coal." The decree of sale under which Ross purchased describes the land as follows: "All that certain parcel of land in this county lying on the waters of Berkeley Run and adjoining lands of Jordan H. Barnes, James W. Batson and others, containing 38¾ acres and also 27 acres of coal underlying the said tract and other land adjoining thereto, all of which was conveyed to him by George H. Smith and wife by deed dated July 20, 1892."

Upon the memorandum above quoted, the plaintiff demanded, and the court decreed to him, all the coal in the tract of land, which consists of two or more veins, and, in addition thereto, three and 88-100 acres out of the upper or Pittsburg vein of coal in the adjoining lands of George H. Smith, so as to make 27 acres of the Pittsburg vein, it having been ascertained by survey that there were only 23 12-100 acres of that vein in the 38¾ acre tract. At the date of the

making of the contract, the existence of but one vein of coal in the land, the Pittsburg vein, was known. The plaintiff so testifies. This was the upper vein, cropping out on the hill-side, and not co-extensive with the tract of land.

The defendant's contention is that the plaintiff is entitled, under the contract, to have a conveyance of 27 acres of the Pittsburg vein, and no part of any other coal in the 38¾ acre tract. He insists that, in construing the contract, the court· should take into consideration the situation of the parties, the circumstances surrounding them, and the knowledge they had, respecting coal in the land, at the time the contract was made.

Standing upon the strict letter of the written contract, reciting the sale of the coal in the land, bought by the vendor under the decree, the plaintiff denies the admissibility of any parol evidence and insists that an interpretation of the contract, in accordance with the view of the defendant, in the light of the parol evidence adduced, would work a violation of the rule of law which forbids the introduction of parol evidence to contradict, vary, add to or alter the terms of a written instrument.

In taking this position, counsel for the appellee assume, for this contract, the solemnity of a deed, and would apply to it a technical rule of construction peculiar to deeds, namely, that a grantor cannot, by a subsequent clause in his deed, destroy or nullify a grant made by him in a preceding clause thereof, and that intention disclosed by earlier clauses in a deed will control that revealed by later ones. Dev. Deeds, section 838. Under it, the stipulation, "I sell to A. Armstrong the coal in the Barnes & Smith land bought by me under decree of last Court," might not be narrowed by the second paragraph of the memorandum, stating the area of the coal and referring to the Smith deed for description thereof, but we are not called upon to decide the question, for two reasons: First, the rule invoked has been very much impaired, if not abolished by decisions of this Court and the great weight of modern authority. Secondly, the rule, if operative in all its pristine vigor and strength, would not be applicable in the construction of this mere executory contract of sale.

"It is an old rule that, in the construction of deeds, the

earlier clauses control the later ones; but this rule, in effect, is practically abrogated, or if employed, is only resorted to when reconcilement becomes impossible. The later and better rule would seem to be that inconsistencies are to be reconciled; and while the former rule may still be applied where a subsequent clause would defeat the grant, it is never permitted to prevail where there is room for construction. If it is the clear intent of the grantor that apparently inconsistent provisions of a deed shall all stand, such limitations upon and interpretations of the literal signification of the language used will be imposed as will give effect, if possible, to all of its provisions. On the other hand, where the intention of the parties is decisively shown from one clause, the intention thus shown will control, notwithstanding ambiguity and inconsistencies in other clauses." Warvelle on Vendors, section 355. "Repugnant words must yield to the purpose of the grant, where such purpose is clearly ascertained from the premisis of the deed, though such words stand first in the grant." *Goldsmith* v. *Goldsmith*, 46 W. Va. 426. "A clause in a deed, reserving a life estate in land to the grantor, subsequent to an ostensible grant, in the same deed, of the land in fee simple, is valid." *McDougal* v. *Musgrave*, 46 W. Va. 509.

No legal title has passed by this contract. It is a mere agreement to convey, for the enforcement of which the appellee has called upon a court of equity. Such court will enforce it only in accordance with the true intent and meaning of the parties thereto. Their contract has not yet progressed to that condition which would place it within certain technical rules applicable to deeds and similar instruments, passing title, which have for their foundation reasons of public policy, designed to give stability to titles, and are not applicable to contracts which remain *in fieri*. This distinction is recognized by decisions authoritative in this Court. *Newman* v. *Kay*, 57 W. Va. 98, 117; *Thompson* v. *Jackson*, 3 Rand. 504. See also Sugden on Vendors, chapter 8, section 5, page 491, where additional decisions are referred to.

It may be asserted, without citation of any authority for the proposition, that the admissibility of parol evidence is dependent upon whether the contract is ambiguous. It is necessary, therefore, to determine whether this contract is

ambiguous in any sense. The two kinds of ambiguity need not be here defined, and the first inquiry is whether the contract is ambiguous on its face. As has been stated, it refers to the decree, under which the purchase was made, and the decree refers to the deed by which Jasper M. Smith obtained it. A significant reference to be added, is the direct one of the contract itself to the deed from George H. Smith to Jasper M. Smith, in the stipulation that "There is to be 27 acres of coal & and if not that much coal in the land enough is to come from the Smith adjoining land to make the 27 acres *as in the deed of said George H. Smith to Jasper M. Smith.*"

By these references the decree and deed are made part of the memorandum. The manner in which that deed deals with the tract of land and the coal is peculiar. In one paragraph it conveys the tract of land, without exception or reservation, and thereby necessarily conveys all the coal under it. It then conveys, separately and distinctly, 27 acres of coal, described as lying partly under the tract of land. For some reason, it described, if it did not convey, the land and the coal as separate and distinct things, although part of the coal was included in the land, and so much of it as was in the tract of land need not have been conveyed separately, if, indeed, upon the true interpretation of the deed, it was. If George H. Smith had conveyed the 38¾ acre tract of land, and then, after reciting it to be the intention that the grantee should have 27 acres of coal, in connection with the land, and the existence of a doubt as to whether the land contained so many acres of coal, had granted, conditionally, out of his adjacent lands, enough coal to make good a deficiency, if there should be any, the effect would have been practically the same, unless there is significance in the separate treatment of the coal and the land. But the question to be solved here is one of intention expressed in the contract, not construction of the deed. Why did the parties to the deed adopt such a peculiar description of its subject matter, and attempt to make a double conveyance of part thereof? They attempted to treat the coal and the land as two distinct subjects, although the coal was part of the land and could have passed by the conveyance thereof. Moreover, the area of the land was greater than the area of coal, the quantity whereof was warranted, and yet the parties assumed the probability of a

deficiency in the acreage of coal. This countenances the view that they contemplated coal which was not co-extensive in area with the land conveyed, and tends to explain the reason for treating the land and the coal as separate subjects of conveyance. Evidently they did not contemplate a vein or body of coal equal in area to that of the land. Moreover, the deed evinces an intent to convey, in connection with the land and under it, only 27 acres of coal, even though there should be 38¾ acres of coal in the land. This is the letter of the deed. Legally, the force and effect of the deed might be different. With this, we have nothing to do. We are not construing that deed, nor seeking the intent of the parties to it, further than it has been carried into the contract. The object of our search is the intent of the parties to the contract, which refers to the deed, but is limited to the coal "as in the deed of said George H. Smith to Jasper M. Smith." Does this mean the coal as described in that deed, or the coal as conveyed thereby? That deed conveyed all the coal in 38¾ acres of land, but not as coal, and the parties, in executing it, were under the impression, for some reason, that the coal they had in mind, although underlying the land, was less in area than the land, and probably less than 27 acres. Therefore, they gave it a definite description, treated it as a separate entity, and attempted to convey it as a separate and distinct thing. It does not appear from the face of the deed or contract how many veins of coal were in the land, or how many were known to exist therein at the time the contract was made, and yet both assume that there is coal in the land. Both evince a clear intention to deal with a thing, the existence of which was known. Both bear evidence on their faces that, not only the existence of the thing was known, but that the parties had knowledge of its relative location and quantity. They knew its area was less that that of the land, and that it lay adjacent to the lands of George H. Smith, and that it did not extend from the George H. Smith line to the opposite side of the tract; for, if they had not known that, the provision for a deficiency would have been ridiculous and absurd, since there could not be less than 27 acres of coal in a tract of 38¾ acres of land, if the acreage of the coal equaled that of the land. The Court judicially knows that, when a vein of coal is known to exist in a small tract of land,

and does not crop out within the boundaries thereof, and the topography of the land is such as not to indicate that it runs out within the boundaries, parties are accustomed to deal with it upon the assumption that the vein is persistent, substantially uniform and co-extensive in area with the boundaries of the land. When, therefore, they put into their contract, a stipulation or warranty, providing for a deficiency, in a stated area less than that of the land, or adopt a description which indicates a smaller area, the court is bound to impute to them knowledge thereof; and, when the terms of the contract or deed go further and show that they knew the relative location of the coal in the land, it becomes absolutely certain that the subject matter of the stipulation, covenant or description, is a definite, specific and known thing.

That thing, whatever it is, was sold by Ross to Armstrong, Its description in the contract, aided by the deed referred to, is reasonably certain. It is the coal conveyed and purchased *eo nomine*, the known and described coal, not necessarily all the coal in the 38¾ acre tract. This is the construction of the contract on its face—from the terms used in it. It remains only to find the subject thereof, the thing which answers the description, a step necessary in the application of every deed and contract, however definite and certain in its terms, and in the process of which parol evidence is always admissible. From this conclusion, it results that the contract is not ambiguous on its face.

But, in attempting to apply the contract to its subject matter, it is found, that there are two similar, but not, in all respects, like, veins of coal, one of which fits the description exactly, while the other does not. Of the latter, the parties had no knowledge at the time of the making of the contract. It is not uncertain in quantity. It exceeds the area mentioned in the contract. Its location is such that it touches the boundaries of all the lands adjoining the 38¾ acre tract. If, by reason of indefiniteness, in the descriptive terms of the contract, it were doubtful which of the two veins of coal was intended, what is known as a latent ambiguity would have been developed, by their discovery; and parol evidence, showing the situation of the parties, the surrounding circumstances, their knowledge and conduct, would be admissible, as a means of resolving the doubt. But the aid

of such evidence is not necessary in this instance. The description goes far enough to make it legally certain that the deep vein is not the one intended. On this point, namely, whether it is necessary to call in the aid of parol testimony, the first impression would be that it is, because the fact, that the Pittsburg vein was known to the parties, is involved, and this must be shown by extraneous evidence. Not so, however, for the reason that a part of the description itself is, as we have shown, that the location, quantity and relative situation of the coal were known. In so treating the coal and dealing with it, the parties distinguished it from unknown coal. That it is coal, so known at the date of the contract, is, therefore, a part of the written evidence, to be observed in seeking the subject of the contract. Parol evidence to introduce into, and make it part of, the written description, is not necessary, any more than in the case of a deed, granting land and describing it as known in a particular manner, or by a certain designation. The aid of parol evidence is not needed for any purpose other than the application of the descriptive matter of the contract to its subject, a very different thing from that of introducing, into the written description, terms which the parties must have intended to put into it, but, for some reason, omitted.

That the construction of a contract in which there is a latent ambiguity, by the aid of parol evidence, is tantamount to the reading into it of terms which the parties intended should be a part of it, but failed to express, is revealed by a little attention to the decisions in which this operation has been performed. It happened, in *Simpson · v. Dix*, 131 Mass. 179, that the name of the grantee was Daniel Eastman, and that there were two persons of that name, resident in the same town, father and son; and the question, to be determined by the aid of parol evidence, was which of the two men was intended. As the deed did not add the word "Junior" nor the word "Senior" to the name of the grantee, it was impossible to determine that question from its face. Had it been discovered by parol evidence, that the son was intended, the deed would have operated as if it had described the grantee as Daniel Eastman, Junior. This would have been the equivalent of reading into it the

term "Junior," or some other expression meaning the same thing. Exactly the same situation was disclosed, and the same course pursued, in *Kingsford* v. *Hood*, 105 Mass. 495. When the ambiguity relates to the subject matter of the deed, the same principle operates in the same way. A lease was made of property described in it as the "Adams House situate on Washington Street in Boston." No difficulty was experienced in ascertaining the building and grounds, known as the Adams House, but certain parts of that building were used for hotel purposes and the others for shops, and a doubt arose as to whether it was the intention to lease the entire property or only so much of it as was used for hotel purposes. By the aid of parol evidence it was discovered that only the parts used as a hotel were intended. Then the contract was enforced as if the description had been written "so much of the Adams House as is used for hotel purposes." *Sargent* v. *Adams*, 3 Gray (Mass.) 72, 63 Am. Dec. 718. A case almost exactly like it is that of *Alger* v. *Kennedy*, 49 Vt. 109, 24 Am. Rep. 117.

But to make the matter conclusive, if it cannot be said under the authorities that this contract is free from ambiguity, both patent and latent, enough has been said to show that its terms do not, with certainty, import a grant of both veins of coal. Hence, parol evidence would be admissible to show which vein was intended, if it be certain, from the face of the contract, as we think it is, that only one was intended; and also, to show that but one was intended, if the contract does not, on its face, reveal that, for the terms used do not certainly import that all the coal in the land was intended. Parol evidence is admissible to explain patent, as well as latent, ambiguities. *Crislip* v. *Cain*, 19 W. Va. 438; *Winton* v. *McGraw*, 58 W. Va. 98; *Hansford* v. *Coal Co.*, 22 W. Va. 70.

Treating the contract as a mere option, counsel for the appellant say, upon the authority of *Dyer* v. *Duffy*, 39 W. Va. 148, and *Weaver* v. *Burr*, 31 W. Va. 736, failure, on the part of the appellee to accept performance as offered by the appellants, excuses and releases the latter from performance. As it is a contract of sale and not a mere offer to sell, this position is untenable.

Again it is said, the parol evidence shows the parties were

not in accord as to what the subject of sale was. Enough has been disclosed already to make the fallacy of the contention apparent.

Lastly, a claim to the right of rescission is founded upon the refusal of the appellee to accept performance as offered by the appellant, the interpretation of the latter having been the correct one and his offer an expression of willingness to perform to the extent of his duty in the premises. Since the refusal was not absolute, the rule invoked does not apply. To work a release, a refusal to perform "must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made." *Swiger* v. *Hayman*, 56 W. Va. 123, 126; *Smoot* v. *United States*, 15 Wall. 36; *Dingley* v. *Oliver*, 117 U. S. 490. If this were not the law, it would be a dangerous thing to stand upon a controverted construction of a contract. Every man would act at his peril in such cases, and be subjected to the alternative of acquiescing in the interpretation adopted by his opponent, or putting to hazard his entire interest in the contract. The courts have never imposed terms so harsh or burdens of such weight. It would amount to a virtual denial of the right to insist upon an honest, but erroneous, interpretation.

As, tested by the principles and conclusions herein stated, the decree appealed from is erroneous, it will be reversed, the appellee here adjudged and decreed to be entitled only to a conveyance of twenty-seven acres of the Pittsburg vein of coal, according to the survey made in the cause, of which 23 12-100 acres lies in the 38¾ acre tract of land and 3 88-100 acres in the adjacent Geo. H. Smith tract, and the cause remanded for further proceedings according to the principles herein stated and further according to the rules and principles governing courts of equity.

*Reversed. Remanded.*