# CHARLESTON

BANNISTER *v.* VICTORIA COAL & COKE CO.

Submitted January 14, 1908.     Decided February 11, 1908.

1. ASSUMPSIT, ACTION OF—*Declaration—Promise.*

 A declaration in *assumpsit* which alleges that the plaintiff agreed to do certain things under the contract, and that the defendant in consideration thereof agreed to pay the plaintiff therefor the price stipulated in the contract, sufficiently alleges the promise of the defendant. (p. 505.)

2. SAME—*Implied Assumpsit,*

 An implied promise must be as distinctly alleged in a declaration as an express one. (p. 506.)

3. CONTRACTS—*Breach—Action—Declaration.*

 In a declaration upon a contract for mining coal by plaintiff, the charge, by way of assigning a breach thereof by the defendant, that the " defendant would not permit the plaintiff to go on with the work and performance of said contract, but so conducted itself in and about the operation of said contract as to stop the plaintiff from doing said work, and compelled the plaintiff to cease work on said contract and leave said premises," is not sufficient to apprise the defendant of the particular matter or matters relied on as constituting such alleged breach, and renders the declaration demurrable in that particular. (p. 506.)

4. PLEADING—*Demurrer, Grounds Of.*

 Although a special count in a declaration may show that the contract sued upon continues executory and recovery may not be had upon the common counts, demurrer to the common counts will not be sustained for this reason, such matter of defense properly arising on the trial. (p. 507.)

5. Same—*Defects and Objections—Aider by Verdict.*

In an action of *assumpsit*, a plea of "not guilty" presents a substantial issue, and such misleading and misjoinder of issue thereon will, after verdict, be cured by our statute.   (p. 508.)

6. Same—*Repleader.*

Where such misleading is due to the fault of the defendant, the plea tendered presenting a substantial issue, he will not, after verdict, be allowed the benefit of his own mistake and awarded a repleader.   (p. 508.)

7. Contracts—*Performance or Breach—Renunciation.*

Renunciation by one party to a contract which will excuse performance by the other must be unequivocal and absolute, and deal with the entire performance to which the contract binds the promisor.   (p. 509.)

8. Same.

Where one of the parties to a contract reduced to writing, after partial performance by him, claims there was a subsequent oral modification thereof, denied by the other party, such denial will not amount to a renunciation of the actual contract and excuse performance on the part of the other party, so as to give immediate cause of action as for a breach of the contract.   (p. 510.)

Error to Circuit Court, Fayette County.

Action by Thomas Bannister against the Victoria Coal & Coke Company.   Judgment for plaintiff, and defendant brings error.

*Reversed, and New Trial Awarded.*

Dillon & Nuckolls and Walker & Summerfield, for plaintiff in error.

Payne & Hamilton and J. F. Bouchelle, for defendant in error.

Miller, Judge:

Plaintiff and defendant, June 1, 1901, entered into an executory contract whereby the plaintiff bound himself to mine and deliver all coal in a certain area of land containing about 40 acres, for 68 cents per ton, said area to be worked and laid off according to plans outlined by the superintendent and engineer of the defendant.   By the contract it was understood and agreed that, as the property was then undeveloped, all developments prospective should be done at the

expense of the plaintiff, said 68 cents to include all costs of whatever kind with the exception of props, ties and other supplies, such as the use of live stock and mine cars for delivery of coal. Said contract contained other provisions not necessary to mention. It is admitted by both parties that this contract, which was reduced to writing but not signed (for one reason given by the plaintiff and another by the defendant), contained the agreement as made. But it is claimed by the plaintiff, and denied by the defendant, that on August 1, 1901, a modification of this contract was made, to the effect that "in addition to the matters and things agreed to be done and performed in the above contract by the parties thereto, the defendant would pay to the plaintiff the sum of $1.50 per lineal yard for entry work and 60 cents per lineal yard for breakthrough or lateral entry work." After work in execution of the contract was begun and continued for some time by the plaintiff, he stopped work, and on March 24, 1904, instituted this suit.

Besides the general common counts in *assumpsit*, there is a *quantum meruit* count for work and services alleged to have been done by the plaintiff about the business of the defendant for which it promised to pay him so much money as he reasonably deserved to have, and also *quantum valebant* count charging that the plaintiff had sold and delivered to the defendant certain timber, steel rails, etc., for which it promised to pay him on request so much money as the same were worth. There is also a special count on said contract setting forth the mutual promises substantially in the terms of the contract, including the promise of the defendant to pay the plaintiff 68 cents per ton as provided therein. With respect to the alleged modification of the contract, it is alleged that on the first day of August, 1901, the parties further agreed that, "in addition to the matters and things agreed to be done and performed in the above contract by the parties thereto the defendant would pay the plaintiff the sum of $1.50 per lineal yard for entry work and 60 cents per lineal yard for breakthrough or lateral entry work;" and, by way of assigning a breach of the contract, it is averred "that after the agreements above set forth were made and entered into by the plaintiff and defendant, the plaintiff in consideration thereof entered upon said work and

built two drift mouths and drove entries and breakthroughs and mined a small part of the coal from the said area as provided in the agreement between the plaintiff and the defendant, and expended large sums of money, towit, five thousand dollars, in preparing said mines to get out the coal therefrom according to said contract, and was able to carry out said contract on his part, and would have done so but for the interference of the said defendant; that while the plaintiff was engaged in performing the said contract, towit, on the —— day of December, 1901, the defendant refused *to furnish any yardage where the coal from said mines could be hauled and received by the defendant,* and the defendant would not permit the plaintiff to go on with the work and performance of said contract, but so conducted itself in and about the operation of the said mines as to stop the plaintiff from doing said work, and compelled the plaintiff to cease work on said contract and leave the said premises, whereby the plaintiff hath lost and been deprived of divers gains and profits which might and otherwise would have arisen and accrued to him from the mining of said coal from the area of land above described under the terms of the agreement aforesaid, towit, at the county aforesaid, to the damage of the said plaintiff the sum of twenty thousand dollars." To the declaration and each count thereof the defendant demurred, and also entered a plea of "not guilty." The demurrer was overruled, and issue joined upon the plea. Upon the trial there was a verdict and judgment for the plaintiff for $1,396.24.

Upon the writ of error to this Court, the first point of error relied upon by the defendant is the action of the court below on the demurrer. It is claimed that, as the special count only charges that the defendant "agreed" to perform its contract or to do the things required of it thereunder, it is bad as not expressly alleging a promise; and we are referred to *Grover* v. *Railroad Co.*, 53 W. Va. 103; *Sheppard* v. *Insurance Co.*, 21 W. Va. 368; *Waid* v. *Dixon*, 55 W. Va. 191, and other cases—to the effect that a declaration in *assumpsit* based on mutual promises which fails to allege the promises of the plaintiff and that the defendant in consideration thereof promised to do the things alleged, is demurrable. We do not think this point well taken. As

we have seen, the declaration does allege, after alleging what the plaintiff was to do, that the defendant in consideration thereof "agreed" to pay the plaintiff 68 cents per ton, and, in the allegation respecting the alleged modification of the contract, charges that the defendant "agreed" to pay the plaintiff the sum of $1.50 per lineal yard for entry work and 60 cents per lineal yard for breakthrough or lateral entry work. We think these allegations are equivalent, if not in exact compliance with the rule requiring, express averment of the defendant's promise. Equivalent words are sufficient. 1 Chit. Pl. 308; *Robinson* v. *Welty*, 40 W. Va. 385; *Bonding Co.* v. *Milstead*, 102 Va. 687. There is a point of demurrer, not noticed by counsel, which we think renders this special count defective. As we have seen, the breach of the contract specifically alleged is that the defendant "refused to furnish any yardage where the coal from said mines could be hauled and received by the defendant;" but there is no allegation in the declaration, unless implied, that the defendant agreed to "furnish any yardage where the coal from said mines could be hauled and received by the defendant." An implied promise, as well as an express one, must be specifically alleged, in order to constitute good pleading. *Mould & Foundry Co.* v. *Steel & Iron Co.*, 62 W. Va. 288. If, however, we treat this as surplus matter, we see from the declaration that the plaintiff alleges want of performance of the contract on his part, and hence would not be entitled to recover the price which in the conclusion of the declaration it is alleged the defendant, although often requested, failed to pay; or, unless the plaintiff alleges performance of the contract on his part, he would not be entitled to recover the price under the contract. We are forced to inquire therefore whether the general allegation, without specification, that the defendant did not permit plaintiff to go on with the work in performance of the contract, etc., is sufficient to put the plaintiff on notice and to excuse performance of the contract by the plaintiff. We do not think this an allegation which, within the rule of *Transportation Co.* v. *Oil Co.*, 50 W. Va. 611, syllabus point 5, could be enlarged by a bill of particulars. The allegation that the defendant compelled the plaintiff to cease work on said contract and leave the premises is somewhat specific; but we do not think it apprises

the defendant, within the rules of good pleading, as to the means employed by which it compelled the plaintiff to cease work and abandon the contract.

It is claimed, moreover, that the demurrer ought to reach the common counts—on the theory that the special count discloses a continuing, executory contract, and that, so long as the contract continues executory, resort may not be had to the common counts; and we are referred to *Railroad Co.* v. *Lafferty*, 2 W. Va. 104, and Hogg's Pl. & F. section 76. Other cases to the same effect are *Railroad Co.* v. *Polly*, *Woods & Co.*, 14 Grat. 445, and *Railroad Co.* v. *Lafferty*, *Id.* 477. But we do not think this point can be reached by demurrer. It properly arises on the trial. According to the special count, the breach of contract charged is the putting an end to it by the defendant. In *United States* v. *Beehan*, 110 U. S. 329, the court observes on this subject:   "When it is said in some of the books that where one party puts an end to the contract the other party can not sue on the contract, but must sue for the work actually done under it, as upon a *quantum meruit*, this only means that he can not sue the party in fault upon the stipulations contained in the contract, for he himself has been prevented from performing his own part of the contract upon which the stipulations depend.    But surely the willful and wrongful putting an end to a contract, and preventing the other party from carrying it out, is itself a breach of the contract for which an action will lie for the recovery of damage which the injured party has sustained." In *Tunnel* v. *Mayo*, 7 Johns. 132, it is said:   "Where the party declares on a special agreement, seeking to recover thereon, but fails altogether, he may recover on a general count, *if the case be such that, supposing there had been no special contract, he might still have recovered.*" In view of what we shall have to say on the merits, we emphasize the words of qualification just quoted. But in *Robinson* v. *Lynch*, 18 Johns. 456, it is held that, because the plaintiff has made a mistake in declaring according to the real contract, there is no reason why he should be permitted to resort to his general counts. But this of course assumes that the contract sued on remains executory; for, according to the case of *Railroad* v. *Lafferty*, *supra*, and other Virginia and West Virginia cases cited in

the same connection, if the contract has been fully executed and nothing remains to be done under it but the payment of money, recovery may be had upon the common counts.

The next point made is that the court erred in empanelling the jury to try the issue joined on the plea of "not guilty," the proper plea being "*non-assumpsit*", the plea of "not guilty" not presenting a substantial issue. The cases of *Ruffner* v. *Hill.* 21 W. Va. 152, *Stevens* v. *Friedman,*, 53 W. Va. 79, and *Henry* v. *Railroad Co.*, 40 W. Va. 234, relied upon by defendant, we do not think in point. These cases do hold that, where there is no plea or is a plea which does not present a substantial issue, the defect will not be cured after verdict. But the plea of "not guilty" in an action of *assumpsit*, while irregular, we think does present a substantial issue. In the case of *Garland* v. *Davis*, 4 How. 131, 146, in discussing this subject reference is made to cases holding that, either in debt or *assumpsit*, the plea of "not guilty" is cured by verdict, because it contains enough to put in issue all that is important in the declaration. Such mispleading or misjoining of issue, after verdict, is cured by our statute, even as against the one joining in such issue. *Huffman* v. *Anderson*, 9 W. Va. 634; *Douglass* v. *Land Co.*, 12 W. Va. 512; *State* v. *Seabright*, 15 W. Va. 590. Here it is the defendant complaining of its own default, that too after verdict and after motion by the plaintiff at the trial, overruled, to require a better plea. The party thus offending will not be permitted to take advantage of his own default in pleading. *Henry* v. *Railroad Co.*, 40 W. Va. 234, 240. In *Gray* v. *Kemp*, 88 Va. 201, it is held in such case that the court will not allow the defendant the benefit of his own mistake and award a repleader. In *Bonsack* v. *Roanoke County*, 75 Va. 585, it was ruled that a repleader will not be awarded if it appear from the record that, had a proper plea been pleaded, the decision of the issue must have been the same. We conclude therefore that this mispleading can not be availed of by the defendant.

Other errors assigned relate to the refusal of the court to exclude the testimony of certain witnesses for the plaintiff, the giving of certain instructions for the plaintiff variance between *allegata* and *probata*, alleged distinctness between the original and the modified contract, and the claim that the ver-

dict is contrary to the law and the evidence. Elaborate arguments are made on both sides on these points; but the conclusion we have reached renders unnecessary consideration of any of these points except the last, which involves the only question of merit presented by the record and vital to the plaintiff's case. The declaration and proofs disclose that the basis of the plaintiff's action, though defectively pleaded in the special count, is that the defendant had so interfered with him and interrupted the execution of the contract as to give an immediate cause of action as for a breach, and which excused performance on the part of the plaintiff, and entitled him (upon the principle announced in *United States* v. *Behan, supra,* and cases there cited) to sue upon the contract. By this special count, plaintiff has elected to proceed upon the contract as he claims it, and to call for damages sustained in the partial execution thereof and for loss of profits. The evidence shows that there was no disagreement between the parties as to the original contract in writing, and the evidence of both plaintiff and defendant shows conclusively not that the defendant renounced the contract as it claimed it to be, but that it denied the modification thereof claimed by the plaintiff. The defendant claimed that its only contract was covered by the paper writing, and the plaintiff admits that the defendant had kept and performed every part of that contract. The question is thus presented, whether the rule respecting renunciation of contracts by one party which will excuse performance by the other is applicable here. It is a general rule, announced by many authorities, that the renunciation of the other party which will excuse performance must be unequivocal and absolute, and that the renunciation must deal with the entire performance to which the contract binds the promissor, else it does not discharge the promisee. A few of our own decisions will suffice on this proposition. *Gross* v. *Lewis*, 54 W. Va. 433; *Poling* v. *Boom & Lumber Co.*, 55 W. Va. 529, 543, *Marsh* v. *Despard*, 56 W. Va. 132. It is not pretended, however, that there was any renunciation by defendant of the contract in writing. The contention is that the defendant refused to perform the contract with the modification claimed by the plaintiff. But is the defendant to lose the benefit of his contract as originally made, on the theory of renuncia-

tion, because he disputes with plaintiff the interpretation thereof or the existence of the modification? We do not so interpret the authorities. This question was recently before this Court where a controversy arose as to the interpretation of a contract, and it was sought by plaintiff to invoke the rule of rescission. The Court, by JUDGE POFFENBARGER, said: "The claim of the right of rescission is founded upon the refusal of the appellee to accept performance as offered by the appellant, the interpretation of the latter having been the correct one and his offer an expression of willingness to perform to the extent of his duty in the premises. Since the refusal was not absolute, the rule invoked does not apply. To work a release a refusal to perform must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made." *Swiger* v. *Hayman*, 56 W. Va. 123, 126; *Smoot* v. *United States*, 15 Wall. 36; *Dingley* v. *Oliver*, 117 U. S. 490. If this were not the law, it would be a dangerous thing to stand upon a controverted construction of a contract. Every man would act at his peril in such cases, and be subjected to the alternative of acquiescing in the interpretation adopted by his opponent, or putting to hazard his entire interest in the contract. The courts have never imposed terms so harsh or burdens of such weight. It would amount to a virtual denial of the right to insist upon an honest but erroneous interpretation." *Armstrong* v. *Ross*, 61 W. Va. 46. Clearly, therefore, under these conditions, the plaintiff was not in a position to treat the mere denial by defendant of the modification as a renunciation of the contract. Such denial could in no sense be treated as a breach, or give right of action on the contract. In case of such disagreement between the parties as to what the contract really was, the remedy of the plaintiff was upon the contract as he claimed it, after performance or partial performance, when payments became due. After judgment in his favor upon such issue, further refusal of the defendant to perform the contract as thus determined might put him in the position he has assumed in this case; but that question is not now before us, and we merely moot it. Our conclusion is that the plaintiff has not presented such a case, upon the pleadings and proofs, to entitle him to any relief, and that the motion to set aside the verdict should have prevailed.

*Reversed, and New Trial Awarded.*