PETOSKEY PORTLAND CEMENT CO. v. E. V. BENJAMIN CO., Inc.

(Circuit Court of Appeals, Sixth Circuit. February 15, 1924.)

No. 3934.

1. Contracts ☞313(1)—Repudiation, to be effective, must be an unequivocal and absolute refusal to perform.

Repudiation of a contract is unilateral, and to be effective must be an unequivocal and absolute refusal to perform.

2. Sales ☞182(1)—Construction of correspondence respecting performance of a contract is for the court.

Where negotiations respecting performance of a contract of sale were entirely by correspondence between the parties, the date of its repudiation by the buyer held properly determined by the court.

3. Sales ☞177—Date of repudiation of contract determined from correspondence.

Where, on correspondence respecting a contract for the sale by plaintiff to defendant of a quantity of bags, defendant only asked a modification by postponement of delivery, until a final letter, in which it admitted the purchase of bags elsewhere and definitely refused to perform, the date of repudiation held that of the last letter.

4. Sales ☞384(6)—Measure of damages for breach of contract by purchaser.

In an action for breach of a contract by which plaintiff was to manufacture and sell to defendant a large number of bags, where plaintiff had

manufactured the cloth before repudiation of the contract by defendant, the court correctly instructed that the measure of damages was the difference between the market value of the cloth, at the date of repudiation, plus the estimated cost of making it up, and the contract price of the bags.

5. Sales ☞384(1)—Notice to seller to proceed no further with contract, to affect measure of damages, must amount to a repudiation of the contract.

Under the provision of Uniform Sales Act Mich. § 64, that if the buyer repudiates the contract, or notifies the seller to proceed no further therewith, he shall be liable for no greater damages than the seller would have suffered if he did nothing toward carrying out of the contract after receiving notice of the buyer's repudiation or countermand, the notice by the buyer, to be effective, must amount to a repudiation or countermand, and not merely a request for delay.

In Error to the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Action at law by the E. V. Benjamin Company, Inc., against the Petoskey Portland Cement Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Edgar H. Johnson, of Grand Rapids, Mich. (Travis, Merrick, Warner & Johnson, of Grand Rapids, Mich., on the brief), for plaintiff in error.

Julius H. Amberg, of Grand Rapids, Mich. (Butterfield, Keeney & Amberg, of Grand Rapids, Mich., and Milling, Godchaux, Saal & Milling, of New Orleans, La., on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. Defendant in error (hereinafter referred to as plaintiff) is a corporation of New Orleans, La., and as proprietor and owner of the Maginnis Cotton Mills, of that city, is engaged in the business of manufacturing and selling Osnaburg bags. Osnaburg is a trade-name for a certain grade of cotton cloth, which is chiefly used in making cement bags. Plaintiff not only makes the bags from the cloth, but also manufactures the cloth from the raw cotton. Plaintiff in error (hereinafter referred to as defendant) is a Delaware corporation, with its principal office and factories located at Petoskey Mich., and is engaged in the manufacture and sale of cement.

The parties entered into valid contracts, dated August 19, 1920, but executed September 2, 1920, for the sale by plaintiff to defendant of 300,000 Osnaburg cement bags from 30-inch 7-ounce Osnaburg cloth, cut 36 inches, with hemmed top and Bates valve, and printed with defendant's brand, to be furnished by defendant. The first 100,000 bags were to be delivered in November, 1920, the second 100,000 in February, 1921, and the third 100,000 in March, 1921. The contract price of the first 100,000 was $229.25 per thousand, and of the last 200,000, $224.25 per thousand. In each case the terms of payment were net cash in 10 days, and freight was to be paid by plaintiff from New Orleans to Petoskey at the rate of 96½ cents per 100 pounds, amounting to the agreed sum of $1,332. The total contract price for the 300,000 bags was $67,775.

Plaintiff recovered damages of over $40,000 for breach of the contracts hereafter recited, in that defendant concededly repudiated its obligation thereunder without justification or excuse. Liability is clear; the amount of damages recoverable is in dispute.

The questions before us are: Did the trial court err, first, in instructing the jury that February 25, 1921, was the date of defendant's repudiation, instead of either submitting the question of the date to the jury or instructing them in accordance with defendant's contention that it had repudiated the contracts at least as early as December 22, 1920; second, in the measure of damages; third, in instructing the jury that at the time of repudiation plaintiff had purchased raw cotton and had manufactured the cotton into cloth, instead of submitting these questions to their determination; fourth, in the admission and rejection of certain testimony.

1. In answer to the court's inquiry, after plaintiff had moved for an instruction fixing February 25, 1921, as the date of breach, defendant's counsel pointed out as the only bases for his claim that work was ordered stopped and that defendant's breach occurred prior to February 25th, defendant's letters of December 22d and November 27th. In the letter of November 27th, defendant stated that it could not furnish the trade-mark—

"until some time next year. For various reasons it will be necessary to hold up the finishing of these bags until about a year from now, or late next summer. We will advise you, so you will have plenty of time to make up these bags with our brand. We are sorry that we are unable to have you proceed with this work at this time, but trust the delay will not seriously inconvenience you."

Clearly this was not a repudiation, but an implied request for delay —a request that three days later plaintiff granted, stating in its letter of November 30th:

"We are perfectly willing to wait a reasonable length of time in order to assist you, but you cannot expect us to carry these bags for you an entire year. * * * We must ask that you give this matter your further attention, and arrange to handle these bags before the dates you mentioned. You can appreciate the car of bags scheduled for delivery in November should have been taken more promptly, and you cannot expect us to carry these bags until next summer."

After further correspondence, in which plaintiff suggested additional purchases at the then lower market prices, defendant wrote, on December 23d.

"We are not in position to use these bags, and will not be until some time next fall. There is nothing further to be done in the matter, except to postpone this order until that time. If this is not satisfactory, you may cancel the order."

[1-3] This likewise is clearly no repudiation, but merely a request for delay or rescission. Rescission is bilateral; repudiation is unilateral; to be effective, repudiation must be an unequivocal and absolute refusal to perform. Smoots Case, 15 Wall. 36, 21 L. Ed. 107. Plaintiff might have granted either request; it might have refused both, and either demanded fulfillment of the contract or endeavored to effectuate some modification. It refused to postpone for a year;

it did not accept the invitation to rescind; it opened up negotiations for a modification by offering to carry the bags for a reasonable time and by urging again additional purchases. On January 12th, 13th, and 19th, and on February 12th, defendant wrote, respectively:

"We are not in position to handle any bags at this time and we will not be in position until some time next summer."

"The tightness of the money market at this time makes it absolutely impossible for us to accept the order given you, unless we can arrange in some way to have you accept our notes."

"We are in receipt of your wire this morning stating you could not use any long-time paper. We are inclosing one of our financial statements, and you will note that we could not handle any short-time notes. We would like to do better, but you can see what we are up against. If you can handle any long-time paper kindly wire us your proposition and we will advise you."

"There is no use in our making short-term notes, because we know that we cannot take care of them, and the best we can possibly do is on the basis above stated. Kindly let us know by return mail whether or not this will be agreeable to you."

Clearly defendant considered, and rightly considered, at each of these dates, that the contracts had not been finally and definitely repudiated by it; the parties were endeavoring to find a basis for modification, not for rescission, still less for repudiation. Finally came the letter of February 25th, admitting, contrary to all prior statements, that defendant had needed bags at that very time. It was then for the first time made entirely clear that the fall in market prices, and not the situation at defendant's plant, had controlled its action. It wrote:

"We had to have some bags, and succeeded in making satisfactory arrangements with another bag company. From your attitude we think you are interested in the present only, not the future. We therefore think it best to discontinue all correspondence, and we will do business elsewhere."

This was indeed a complete and unjustified repudiation. Even if the transactions had not been entirely in writing, there would have been no question to submit to the jury as to the date of repudiation. The evidence is clear and uncontradicted; it could lead to but one conclusion—that reached by the trial judge. See Kutztown Foundry & Machine Co. v. Sloss-Sheffield Steel & Iron Co. (C. C. A.) 279 Fed. 627; Miami Cycle & Manufacturing Co. v. Natl. Carbon Co. (C. C. A.) 268 Fed. 46.

[4] 2. In the charge to the jury, the court assumed, first, that the cloth had been manufactured before repudiation, but, second, because of defendant's failure to send its brand, had not at the time of repudiation been made up into bags; third, that the cloth had cost more than its then market value; and, fourth, that if the contracts had been carried out, plaintiff would have made a profit. On these assumptions, all but the first of which are concededly correct, the measure of damages was held to be, first, plaintiff's actual loss (that is, the difference between the cost of manufacturing the cloth and its market value at repudiation), plus, second, its loss of profits (that is, the difference between the contract price of the bags and the estimated cost to plaintiff of the bags made and delivered; i. e., the actual cost of the cloth, plus the estimated cost of completion and delivery). But, as the court

further pointed out, the actual cost of the cloth was immaterial because in the exact measure that it increased or decreased plaintiff's actual loss, it correspondingly decreased or increased its loss of profits; the addition of the two items would thus remain constant.

The jury were permitted to determine each element in dispute; that is, the market value of the cloth on the date of repudiation and the estimated cost of converting the cloth into bags. Freight was an agreed amount; the cost of manufacturing the cloth was, as above shown, immaterial. The measure of damages was correctly stated by the court.

[5] 3. We are, moreover, entirely satisfied that the evidence conclusively and without contradiction establishes that plaintiff bought cotton specifically to make up the cloth in question, that this cotton was allocated to these contracts, and that it was manufactured into cloth long before the final repudiation, and indeed before the alleged notice of November 27th to stop work. True, the exact cloth produced from the bales of cotton as allocated cannot be definitely ascertained; in the continuous process of manufacture, the cloth for each contract is not made up as a separate unit; substantially, however, the identification is complete inasmuch as the evidence discloses the time when the allocated bales of cotton were put into work and the approximate time needed to manufacture the amount of cloth necessary for the 300,000 bags. Furthermore, the evidence establishes that all of plaintiff's Osnaburg cloth, superior as it was to that of its competitors, was of a uniform grade from a practically uniform, though low, grade of cotton, but without waste.

In any event, the controlling date is February 25th, and not November 27th. The Uniform Sales Act, by section 64 (Comp. Laws Mich. § 11895), provides:

"If * * * the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing towards carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand."

"Therewith" refers, not to some work under the contract, but to the contract or sale itself; the notice must amount to a repudiation or countermand of the contract. As hereinabove stated, this letter was a request for delay in delivery; not an order to stop the work preparatory to delivery; certainly not a repudiation or countermand of the contract itself.

While a preliminary memorandum of August 18th referred to "bags made from our usual quality of Osnaburg," the formal contract in suit specifies only "Osnaburg." If, as the trial judge, in colloquy with counsel, stated—a statement with which we agree—Osnaburg from other mills could have been offered, had plaintiff's mill been destroyed, it would follow that, as there is no express provision to this effect in the contract, plaintiff could not be required to manufacture the goods in any case. On this interpretation, it is immaterial whether or not the cloth was manufactured before repudiation; the measure of damages would be the difference between the contract price

of the bags and the market value of Osnaburg cloth, or of Osnaburg cloth of plaintiff's grade and quality, at the date of repudiation, plus the cost of conversion into bags; the result would be identical with that obtained under the measure of damages as given by the court.

4. We have considered the assignments of errors as to the admission of certain testimony; it is unnecessary to detail them, for clearly defendant was not prejudiced by the rulings of the court.

Judgment affirmed.