**KIMEL et al. v. MISSOURI STATE LIFE INS. CO.**
No. 987.

Circuit Court of Appeals, Tenth Circuit.
June 8, 1934.

Glenn Porter and Enos E. Hook, both of Wichita, Kan. (H. W. Hart and Getto McDonald, both of Wichita, Kan., on the brief), for appellants.

Arnold C. Todd, of Wichita, Kan. (Julian E. Ralston and Ralph Gore, both of Wichita, Kan., and Allen May, and J. R. Burcham, both of St. Louis, Mo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On September 24, 1921, the Insurance Company issued its policy of life insurance to Harvey O. Kimel, who was then 54 years of age. The pertinent provisions of the policy are set out in note 1.[1]

Kimel paid the premiums due on July 21 of each year for the years 1925 to 1930, inclusive.

Kimel became totally and, permanently disabled within the meaning of the policy in 1925, when he was 58 years old. In 1931, after he had attained the age of 64 years, he made proof of such total and permanent disability, and on August 13, 1931, the Insurance Company approved such proof.

On August 28, 1931, the Insurance Company wrote Kimel in part as follows:

"This policy provides that the Company will allow to accumulate without interest as an indebtedness against the policy all premiums required thereon for every policy year following the date of approval by the Company of proof that the insured has become totally and permanently disabled after attaining age sixty.

"This claim was approved on August 13, 1931, and the Company has allowed the annual premiums that became due July 21, 1931, to be charged, as a lien against the policy. You will find attached the Company's official receipt for $255.20, which shows that the annual premium which became due July 21, 1931, has been charged as a lien."

On October 9, 1931, Kimel through his attorneys wrote the Insurance Company in part as follows:

"Gentlemen: In reply to your letter of August 28th, 1931, to Mr. Harvey O. Kimel announcing the approval of the claim for benefits under the above policy for total and permanent disability, please be advised that Mr. Kimel contends that under this clause in the policy he is entitled to the payment of $50 per month beginning on the 20th day of November, 1931, and continuing for the remainder of his life, and that he is entitled to no claim against him, or any lien against his policy, by virtue of the annual premium, and that he is entitled to payment by you of his annual premium without any charge against his policy as provided in the policy. * * *.

"Will you * * * advise if the Company intends to begin payment of the $50 per month as above set forth and intends to comply with the provisions of the policy with reference to the payment of the annual premium.

"Please advise us."

On October 19, 1931, the Insurance Company wrote to Kimel's attorneys in part as follows:

"The policy provides that the disability benefit to which the insured is entitled after attaining age 60 is to allow all premiums required for every policy year following the date of approval by the Company of proof that the insured has become totally and permanently disabled, to accumulate without interest as an indebtedness. * * * He (Kimel) was over 64 years of age when such proofs were filed, the only benefit he is entitled to is to have subsequent premiums charged as a lien without interest. We will be glad to carry out this policy on this basis in accordance with its terms, as we informed Mr. Kimel, as long as he remains permanently totally disabled."

Thereafter Kimel brought this action against the Insurance Company. The petition set up three causes of action. In the second he sought to recover total and perma-

---

[1] "Total and Permanent Disability Benefit. The Company will pay to the insured a life income of Ten Dollars each month for each $1,000 of the face amount hereof if the said insured shall become totally and permanently disabled, as hereinafter defined, before attaining age sixty. The first payment of such income shall be made six months after receipt by the Company of due proof of total and permanent disability, and subsequent payments shall be made monthly thereafter as long as the insured lives and suffers such disability, and shall be in addition to all other benefits provided by this policy.

"The Company will also pay for the insured the premiums required on this policy for every policy year following the date of approval by the Company of proof that the insured has become totally and permanently disabled, as hereinafter defined, before attaining age sixty, and the premiums so waived will not be deducted in any settlement of the policy which will continue in full force to maturity with loan, cash and other guaranteed values increasing from year to year in like manner as if the premiums were being duly and regularly paid by the insured.

"The Company will also allow to accumulate without interest as an indebtedness against said policy all premiums required hereon for every policy year following the date of approval by the Company of proof that the insured has become totally and permanently disabled, as hereinafter defined, after attaining age sixty."

nent disability benefits from September, 1925, at the rate of $50 a month to January 18, 1932, the date of the filing of the petition. In the first he sought to recover damages for anticipatory breach of the contract to pay total and permanent disability benefits, based on a life expectancy of eleven years and seven months from the date of filing the petition. In the third he sought to recover the premiums paid from 1925 to 1930.

The trial court sustained a demurrer to the third cause of action.

In its answer the Insurance Company admitted the issuance of the policy and that proof of total permanent disability had been made on May 27, 1931, and alleged that, in accordance with the terms of such policy, it issued a premium receipt for 1931, and that it had fully performed all of the obligations imposed upon it by the terms of the policy.

Trial by jury was duly waived and the cause tried to the court. The trial court found that the Insurance Company had not repudiated its policy, but had fully performed all its obligations thereunder, and entered judgment for the Insurance Company. Kimel appealed. Thereafter he died and his heirs at law have been substituted as parties appellant.

■ To amount to an anticipatory breach of a contract, the renunciation by the promisor must be clear and unequivocal,[2] and the refusal to perform must be of the whole contract or of a covenant going to the whole consideration.[3]

Here, as we shall presently undertake to show, Kimel demanded more from the Insur-

ance Company than he was entitled to receive, and the Insurance Company offered less than it was obligated to render. Each in good faith insisted on his own interpretation of the contract.

■ An offer to perform in accordance with the promisor's interpretation of the contract although erroneous, if made in good faith, is not such a clear and unequivocal refusal to perform as amounts to a renunciation giving rise to an anticipatory breach.[4]

As stated in Armstrong v. Ross, 61 W. Va. 38, 55 S. E. 895, 899:

"If this were not the law, it would be a dangerous thing to stand upon a controverted construction of a contract. Every man would act at his peril in such cases, and be subjected to the alternative of acquiescing in the interpretation adopted by his opponent, or putting to hazard his entire interest in the contract. The courts have never imposed terms so harsh, or burdens of such weight. It would amount to a virtual denial of the right to insist upon an honest, but erroneous, interpretation."

■ Moreover here the refusal of the Insurance Company was a response to a demand made by Kimel, which undertook to exact a greater performance than the Insurance Company was obligated to render.

Whether there is an absence of mutual interdependent executory obligations rendering the doctrine of anticipatory breach by renunciation inapplicable, we find it unnecessary to decide. See however Parks v. Maryland Casualty Co. (D. C. Mo.) 59 F.(2d) 736; Kithcart v. Metropolitan Life Ins. Co. (D. C.) 1

---

2 Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Dingley v. Oler, 117 U. S. 490, 6 S. Ct. 850, 29 L. Ed. 984; McNamara v. Cerf (C. C. A. 2) 4 F.(2d) 997; Suburban Impr. Co. v. Scott Lumber Co. (C. C. A. 4) 67 F.(2d) 335, 337, 90 A. L. R. 330; Frank F. Pels Co. v. Saxony Spinning Co. (C. C. A. 4) 287 F. 282; Petoskey Portland Cement Co. v. E. V. Benjamin Co. (C. C. A. 6) 296 F. 9, 11; Goldwyn Distributing Corp. v. Brenneman (C. C. A. 3) 13 F.(2d) 105, 107; Hoggson Bros. v. First Nat. Bank of Roswell (C. C. A. 8) 231 F. 869; Rauer's Law & Collection Co. v. Harrell, 32 Cal. App. 45, 162 P. 125, 135; Guitron v. Rodriguez, 105 Cal. App. 513, 288 P. 134; Fayette-Kanawha Coal Co. v. Lake & Export Coal Corp., 91 W. Va. 132, 112 S. E. 222, 23 A. L. R. 565; R. T. Clark & Co. v. Miller, 154 Miss. 233, 122 So. 475; Southern Pub. Ass'n v. Clement's Paper Co., 139 Tenn. 429, 201 S. W. 745, 747, L. R. A. 1918D,

580; Indiana Life Endowment Co. v. Reed, 54 Ind. App. 450, 103 N. E. 77, 81; Bannister v. Victoria C. & C. Co., 63 W. Va. 502, 61 S. E. 338; Armstrong v. Ross, 61 W. Va. 38, 55 S. E. 895. See, also, United State Potash Co. v. McNutt (C. C. A. 10) 70 F.(2d) 126.

3 McNamara v. Cerf, supra; Rauer's Law & Collection Co. v. Harrell, supra; Guitron v. Rodriguez, supra; Fayette-Kanawha Coal Co. v. Lake & Export Coal Corp., supra; Indiana Life Endowment Co. v. Reed, supra; Bannister v. Victoria C. & C. Co., supra.

4 Bannister v. Victoria C. & C. Co., 63 W. Va. 502, 61 S. E. 338; Armstrong v. Ross, 61 W. Va. 38, 55 S. E. 895, 899; Indiana Life Endowment Co. v. Reed, 54 Ind. App. 450, 103 N. E. 77, 81; Southern Pub. Ass'n v. Clements Paper Co., 139 Tenn. 429, 201 S. W. 745, 747, L. R. A. 1918D, 580.

F. Supp. 719; Moore v. Security Trust & L. I. Co. (C. C. A. 8) 168 F. 496.

We conclude therefore that there was no anticipatory breach of the contract.

 Under the insurance contract the obligation to pay total and permanent disability benefits is not conditioned on disability arising and proof being made thereof before the insured attains the age of sixty, but only on such disability arising before the insured attains that age. The contract reads, "The company will pay to the insured a life income * * * if the * * * insured shall become totally and permanently disabled * * * before attaining the age of sixty."

Proof of such disability is only required to mature the first and subsequent monthly installments. The contract reads, "The first payment of such income shall be made six months after receipt by the company of due proof of permanent disability, and subsequent payments shall be made monthly thereafter as long as the insured lives and suffers such disability." Proof fixes the time of payment, but disability arising before assured has attained the age of sixty raises the obligation to pay.

Since Kimel became totally and permanently disabled before attaining the age of sixty, we conclude that the Insurance Company was liable to him for monthly payments commencing six months after the proof had been received, and continuing so long as he lived and suffered such disability.

 The contract further provides that "the company will also pay for the insured the premiums required on this policy for every policy year following date of approval by the Company of proof that the insured has become totally and permanently disabled * * * before attaining the age of sixty."

The phrase, "before attaining the age of sixty," relates to the time of suffering the disability, not to the approval of the proofs thereof. Here again the proof is required only to fix the time when the Company shall first commence making the payments. We conclude therefore that the Insurance Company was obligated to make all premium payments falling due after the proofs of disability had been approved. However since none accrued subsequently to the approval of the proofs and prior to the commencement of this action, the trial court properly sustained the demurrer to the third cause of action.

Counsel for the Insurance Company assert that on the face of the petition, the total amount recoverable was less than $3,000, exclusive of interest and costs, and that therefore the trial court properly dismissed the petition.

 Kimel sought a total recovery of $12,-333.70 on his three alleged causes of action. On the facts alleged and the principles of law contended for by Kimel, he was here entitled to recover, exclusive of interest and costs, an amount in excess of $3,000.

The amount demanded by plaintiff in his petition, when not fictitious or merely colorable, but claimed in good faith, and not the amount of the ultimate recovery, is the test for determining whether the requisite jurisdictional amount is involved.[5]

" 'Unsuccessful as well as successful suits may be brought' in a federal court, and in either case the ultimate outcome is not the test of jurisdiction. The Fair v. Kohler Die & Specialty Co., 228 U. S. 22, 33 S. Ct. 410, 411, 57 L. Ed. 716. The test is whether an appropriate statement * * * discloses that there is really and substantially involved a dispute or controversy over which the court has been given jurisdiction." Schlosser v. Welsh (D. C. S. D.) 5 F. Supp. 993, 996, and cases there cited.

Where the plaintiff has several demands against the defendant which he may join in one action, the aggregate of those demands exclusive of interests and costs is the amount in controversy.[6]

The aggregate of Kimel's demands asserted in good faith, exclusive of interest and

---

[5] Schunk v. Moline, Milburn & Stoddard Co., 147 U. S. 500, 504, 507, 13 S. Ct. 416, 37 L. Ed. 255; Smithers v. Smith, 204 U. S. 632, 642–644, 27 S. Ct. 297, 51 L. Ed. 656; Barry v. Edmunds, 116 U. S. 550, 559–562, 6 S. Ct. 501, 29 L. Ed. 729; Greene County Bank v. J. H. Teasdale Commission Co. (C. C. Mo.) 112 F. 801, 802–804; Owen M. Bruner Co. v. O. R. Manefee Lbr. Co. (C. C. A. 9) 292 F. 985; Central Commercial Co. v. Jones-Dusenbury Co. (C. C. A. 7) 251 F. 13, 18; Lilienthal v. McCormick (C. C. A. 9) 117 F. 89,

95; Kunkel v. Brown (C. C. A. 4) 99 F. 593, 594, 596; Home Life Ins. Co. v. Sipp (C. C. A. 3) 11 F.(2d) 474, 476; Schlosser v. Welsh (D. C. S. D.) 5 F. Supp. 993.

[6] Baltimore & Ohio S. W. R. Co. v. United States, 220 U. S. 94, 106, 31 S. Ct. 368, 55 L. Ed. 384; Yates v. Whyel Coke Co. (C. C. A. 6) 221 F. 603, 606; Heffner v. Gwynne-Treadwell Cotton Co. (C. C. A. 8) 160 F. 635, 638; Commercial Nat. Bank of Los Angeles v. Catron (C. C. A. 10) 50 F.(2d) 1023, 1025.

costs, was in excess of $3,000. We conclude that the requisite jurisdictional amount was involved.

The judgment is reversed as to the second cause of action, and affirmed as to the first and third causes of action.